## Howell vs. Harvey.

Where A. and B., partners, sold a stock of goods to C. and D., partners, taking their notes for the amount; and D. afterwards withdrawing from the latter firm, and A. became partner with C. by purchase, paying for the interest by a receipt against the notes originally given by C. and D.; B. had no interest in this new partnership, and was not entitled to be made a party to a bill by A. for a settlement and account.

Where A., B., and C. are in partnership, and C. sells all his interest in the property and credits to D., who takes his place in the firm; and a bill for settlement and account is subsequently filed by B. against A. and D., C. need not be made a party.

Wherever the conditions of a partnership are incapable of being fulfilled, or the fruits arising from it cannot be properly enjoyed; a good cause for renunciation is furnished.

Equity often declares partnerships utterly void in case of fraud, imposition, and oppression, in the original agreement; or decrees a dissolution of partnership unobjectionable in its origin, but which subsequent causes have rendered onerous and oppressive.

Cases of gross misconduct, want of good faith, or criminal want of diligence, or such cause as is productive of serious and permanent injury to the partnership concerns, or renders it impracticable to carry on the business, is good ground for a dissolution at the suit of the injured partner.

So habitual drunkenness, great extravagance, or unwarrantable negligence in conducting the business of the partnership, justifies a dissolution; but it must be a strong and clear case of positive or meditated abuse, to authorize such a decree.

For minor misconduct and grievances, if they require redress, the Court will interfere by injunction.

Where the articles of partnership were, that one partner was to furnish funds for keeping up the supplies, *when in his power to do so;* and the other partner to attend to selling the goods, *while he remained at home;* it is clear that the parties never contemplated that slight neglect, or accidental failures of either to keep his engagements should operate a dissolution—but only unequivocal demonstrations of gross acts of abuse or misconduct, where the injury would be imminent and irreparable.

Under such an agreement, occasional absence from the State, of one partner, where the other makes no objection, or detention from home by sickness of his family, does not warrant a dissolution; nor does the fact that the partner so absent was not, generally, a very profitable or attentive partner.

A partnership to continue during the pleasure of the contracting parties, is strictly a partnership at will.

But to enable one partner to dissolve such partnership at his will, the renunciation must be made in good faith, and not at an unreasonable time.

Renunciation is held not to be made *in good faith,* where one partner renounces in order to appropriate to himself the profits which the firm is entitled to receive.

Audit is made at an improper time, when the things are no longer entire that were of consequence to the partnership, and which should have deferred the dissolution.

A partnership for a limited time, cannot be dissolved at the mere pleasure of one partner, within the time prescribed. On the contrary, it can only be dissolved from just motives, and for a reasonable cause.

*Semble,* That *such* partnership cannot be dissolved, in any case, by one partner *sua sponte,* but only by decree of a court of equity.

The partner who breaks off the partnership with an unfair design or for selfish objects, discharges his co-partners from all liabilities to him, but does not thereby free himself from his obligations to them.

When he quits the partnership that he may buy for himself what the *partnership* has a right to purchase, or that he may make a profit for his own advantage, and to their prejudice, he is answerable to the community for the loss and damage; and so, if he quits at an unreasonable time, which occasioned a deprivation of profit to the community, he must repair and make good such loss.

THIS was a suit in chancery, determined in the Johnson Circuit Court, in 1842, before the Hon. RICHARD C. S. BROWN, one of the circuit judges. Harvey filed his bill, alleging that he and one Shanklin sold a store of goods to John Howell and Edward McConnell, for about $6000, taking their notes for the amount; that McConnell withdrew from connection with Howell; and Harvey bought an interest in the goods for $1868, paying Howell that amount by a receipt against the notes; that Howell and Harvey then formed a partnership in January or February, 1838, for five years; Howell to advance money to purchase goods, when in his power, and Harvey to be bookkeeper and salesman when at home; at the end of the time Howell to be credited for money advanced beyond the interest on the capital put in by Harvey, with interest on advances and profits, and residue of stock to be divided equally; that after the business had proceeded about five months, one Henry Smith was taken in as a partner, interested one-half, and Howell and Harvey, under their former agreement, the other half—which no way altered the relation between them; that, after three or four months, John B. Howell bought out Smith, and took his place in the firm. The bill then stated that Harvey went to Kentucky for his family, and Howell to the eastward, to lay in goods; that Howell bought a large stock of goods, and had them shipped in his own name, came home and advertised a dissolution of the partnership in Harvey's absence, excluded him from the business, and sold off the goods. The bill stated that Howell had the partnership articles, and that Harvey did not know the amount of goods on hand when Howell took the business to himself, nor the amount sold, nor the profits, prayed an account, making both Howells defendants; and that the partnership should be continued; or, if dissolved, that he should have his share of the profits, and for general relief.

The answer of Howell, as amended after exceptions filed, admitted the purchase by Harvey of him, on the 25th of January, 1838, of

half his stock of goods and groceries, and of his interest in the debts due Howell & McConnell. He exhibited the articles of co-partnership entered into on that day between him and Harvey, corresponding with the statement in the bill. He stated that, on the same day, the partnership with Smith was formed. The articles were exhibited. They were made between Howell and Harvey, of one part, and Smith of the other; and stated that *they* had consolidated their stock of goods, and had agreed to do business as partners, under the style of Howell & Co., until the parties should agree to dissolve; that the stock put in by Howell and Harvey was in amount $3,139, and by Smith $3,282; and that Smith was to withdraw, at the dissolution, $1,613, with interest from date, and the balance to be equally divided between the partners. Harvey was to attend to the business *when at home,* and Howell and Smith to furnish goods when in their power. He stated that he endorsed a note of $1,000 for Smith, with the proceeds of which, and about $100 of the money of the firm, Smith purchased groceries and shoes to the amount of $500, which were received by the firm. He stated that, on the 29th of December, 1838, John B. Howell took Smith's place in the firm, in every respect, and no change was made thereby in the books. He admitted that he had advertised a dissolution of the partnership, and had excluded Harvey from it, and excused himself on the ground that from the time of the commencement of the partnership to his doing so, which was a term of sexteenth months, Harvey was absent in Kentucky three times, in all about seven months—that he neglected the business; and that Shanklin had enjoined the sale of the goods, because Harvey had not settled with him the amount which he was to pay for his purchase of Howell. He admitted that he purchased about $7000 worth of goods in Philadelphia, on his account, and not for the firm, and stated at length the receipts and accounts of the firm.

John B. Howell demurred. His demurrer was overruled, and he answered, that he bought all Smith's interest in the firm as alleged by John Howell, and admitted that he agreed to publish a dissolution of the partnership for the same reasons stated by John Howell. Of the accounts he knew nothing. To these answers Howell replied generally, and answered to interrogatories in the answer of John

Howell, that he never received any goods or money without regularly charging himself with them. Each answer claimed that the bill should be dismissed, because Smith was not made a party. And after the cause was at issue, the defendants filed a motion to dismiss, which motion was never acted on; and at March term, 1842, the case was ordered by agreement to be submitted to two referees, subject to the revision of the chancellor. Nothing seems to have been done under this reference.

At September term, the chancellor finding the principal matters charged in the bill to be true, and stating that the whole capital stock was $7735, of which Harvey put in $1868, John Howell $1868, and John B. Howell, as subrogated in the place of Smith, $3282, the proceeds whereof, and amount remaining on hand was $7769 31; that the total amount of credits to which the capital stock was subjected was $2094 50; that no profits were realized, but a loss sustained of $752 55; that John Howell had received, in money and goods, $1156 01; John B. Howell, $62 75; and Harvey, $578 18; that John Howell had advanced $300, and John B. was entitled to draw out $1712 50, with interest from the date of partnership, as agreed by the articles with Smith; that John Howell bought goods to the amount of $7,000 before the dissolution, the profit on which would have been 50 per cent. The Court, therefore, decreed a dissolution of the partnership; that the defendants should be charged with, and retain, all the goods, &c., on hand, and that they should pay Harvey $740 47, being one-third the effects remaining after deducting expenses and the amount going to John B. Howell, and also $1166 66, being one-third the profits on the last stock purchased; or in all $1907 13. The defendants appealed.

The testimony in the case proved that the profits on the new stock purchased, must have been at least 50 per cent. It was also proved that Harvey was delayed in Kentucky by sickness of his wife, and returned as soon as he could. It was proved that he neglected his business while attending the store, though as to this the evidence conflicted. It was also proved that Howell knew and made no objection that Harvey was going to Kentucky, and that when both left home there had been nothing said about a dissolution. There was some

evidence about Harvey once or twice receiving small sums which were not entered on the books. It is unnecessary further to notice the evidence in the case, as it in the main supported the allegations in the bill.

*Linton*, for appellants.

*Pike & Baldwin*, contra. There is certainly no want of equity in the bill. Its features may be described in a few words. It shows that a partnership was formed for a term of five years; which, after continuing for several months, and when a large stock of goods was on hand, was put an end to by one partner, without the consent or knowledge of the other, and he excluded from all participation in it; and that the articles of partnership were withheld, and all information as to the effects and profits of the concern.

A plainer case, on the face of the bill, for account, discovery, and relief, was never presented.

The aid of a court of equity is properly invoked in such a case for account and a division of the profits, as well as for a dissolution. *Story on Partnership*, 411, 412, 413, *&c.*

Howell's conduct was certainly ground enough for a dissolution. *Goodman vs. Whitcomb*, 1 *Jac. & Walk.* 569, 572, 673. *Story on Part.* 414. *Marshall vs. Colman*, 2 *Jac. & W.* 200. *Chapman vs. Beuch*, 1 *Jac. & W.* 594. *Norway vs. Rowe*, 19 *Ves.* 148. *Waters vs. Taylor*, 2 *Ves. & B.* 304.

There was no necessity for making Smith a party. John B. Howell had been subrogated in his place, not only as to the visible property, but also as to the *credits* of the concern. No relief could be prayed against him—no account required of him. The rule upon this subject is, that every person who is interested in the event of the suit, or necessary to the relief, must be a party. *Edw. on Par. in ch.* 2. *Wendell vs. Van Renssalaer*, 1 *J. C. R.* 349. *Wilson vs. Hamilton*, 9 *J. R.* 442.

To combine defendants having an interest with defendants having no interest, is a species of multifariousness. *Farquharson vs. Pitcher*, 2 *Russ.* 87. It is not right in any case to make a man a party to

a suit unless you can obtain a decree against him. *Pitch vs. Dalton,* 8 *Price,* 12.

In partnership matters, you need only join those who must necessarily be affected by the decree of the court, as by contribution, personal liability &c. *Duff vs. E. J. Co.,* 15 *Ves.* 213, 227.

Although there is no formal, special prayer for dissolution, there is even in the special prayer matter equivalent to it; and if there had not been, the decree was proper under the general prayer. The dissolution is a relief not inconsistent with the matter of the bill. *Keatts vs. Rector,* 1 *Ark.* 405. *Polk vs. Lord Clinton,* 12 *Ves.* 48. *Hiern vs. Mill,* 13 *Ves.* 120. *Cook vs. Martyn,* 2 *Atk.* 2. *Grimes vs. French,* 2 *Atk.* 141. *Baily vs. Burton,* 8 *Wend.* 353.

There was no need of a jury to assess the damages. Calculations in equity are not made by juries, but by a master or the chancellor. It is a novel position that a jury was necessary. There was no issue of fact made up to be tried, and if there had been, it was matter of discretion whether a jury should be called or not. *Townsend vs. Graves,* 3 *Paige,* 453. *Price vs. Purcell,* 1 *Hen. & Mun.* 372. *Delancey vs. Segman,* 5 *Cowen,* 714. *S. C. Hopk.* 436. Nor was there any need of a reference to a master. There was no obscurity or doubt in the testimony, for it was all produced by the defendants, so far as the accounts were concerned. *Sims vs. Kirtley,* 1 *Mon.* 81.

That the decree was a proper one and for the proper amount is obvious from the answers and testimony. The calculations are correct.

That Howell had no right to dissolve the partnership in the way he attempted to do it, is clear; it being for a definite period, one partner could not dissolve it. *Story on Partn.* 386 to 401. *Peacock vs. Peacock,* 16 *Ves.* 56. *Crawshay vs. Maule,* 1 *Swanst.* 495. *Pearpoint vs. Graham,* 4 *Wash. C. C. R.* 234.

In fact there can be no pretext for saying that the matters stated on the face of the answer itself, taking them all to be true, would have induced a court of equity to dissolve the partnership, if embraced in a bill filed by Howell.

The temporary absence of Harvey, even if against Howell's con-

sent, (which is very far from being proven) would be no good ground. *Story on Part.* 420, *n.*

No misconduct of Harvey is shown, so seriously injurious or mischievous to the partnership, that it could not be tolerated. *Story on Part.* 416.

An attempt is made to show that he was careless and indolent, and that he received one or two small sums, which he neglected to enter on the books, but there is no distinct charge as to these matters in the answer. They could not, therefore, be regarded; and even if they could, were no sufficient cause for dissolution. *Story on Part.* 413. *Wray vs. Hutchinson*, 2 *Mylne & Keen* 255. It must be *gross* misconduct or abuse of authority, or gross want of good faith or diligence productive of serious and permanent injury. *Story on Part.* 414.

*By the Court,* LACY, J. It is said that the bill should have been dismissed upon the hearing for the want of proper parties. We think otherwise. The necessary parties were all before the court. The firm of John Howell & Co. was composed of John B. Harvey, John Howell and John B. Howell, and the record shows that no one else had any interest in their business, or the settlement of their accounts; Shanklin had not the most remote connection with the partnership concern. Harvey bought an interest in a stock of goods of John Howell and credited a note that he and Shanklin jointly held on Howell and McConnel with the amount of the purchase money. This he had a right to do. Should Harvey have used more than his just proportion of this joint note, he unquestionably would be answerable over to Shanklin; but then it is manifest that this mere possible liability of Harvey would give Shanklin no interest in the partnership concern, nor would it entitle him to be made a party to the present suit. Smith was originally one of the partners with Harvey and Howell, but after continuing in the firm eight or nine months, he sold and conveyed all his interest to John B. Howell, with the consent and approbation of the other partners. As it is evident that John B. Howell was substituted as a partner in the firm in the place of Smith, he of course was subrogated to all the rights and privileges of Smith, who has no interest in the present suit. The rule on the subject of

making the necessary parties in suits of equity, is so plain and universal that it can neither be mistaken nor misapplied. All persons should be made parties, who have an interest in the matters in dispute, or who may be benefitted or injured by the decree. This rule has been followed in the present instance, and therefore it was proper to hear the cause upon its merits. *Wendell vs. Van Rensalaer,* 1 *J. C. R.* 349. *People vs. Dalton,* 8 *Price* 1. *Duff vs. E. J. Co.,* 15 *Ves.* 213, 227. The business was to be conducted in the name of John Howell and company, and Howell and Harvey were to share an equal moiety of the profits and loss with Smith; and upon the dissolution of the partnership, Smith was to be reimbursed for the excess of his advances with six per cent. interest. Smith and Howell agreed to advance the necessary funds, as far as practicable to keep up a supply of goods, and Harvey was to attend to selling them while at home. Smith, as was before stated, sold and conveyed to John B. Howell all his interest on the 16th of December, 1838; thereupon Howell was admitted as a partner with all Smith's rights, and he took upon himself the discharge of all his duties. The bill states that the complainant performed his part of the agreement and that John Howell and John B. Howell violated their contract in not furnishing the necessary supplies of goods for the store; that John Howell went to Philadelphia and bought a large stock of goods and shipped them in his own name, and on his return advertised a dissolution of the co-partnership with the consent of John B. Howell in the absence of the complainant and against his will. It avers that John Howell took all the goods, books and accounts into his own hands, and excluded Harvey from all participation in the business. The bill makes John Howell and John B. Howell defendants, and prays an account may be taken; that the partnership may be continued or dissolved as the equity of the case may be, and it concludes with a prayer for general relief.

The answers admit most of the material allegations of the bill. The answer of John Howell insists that he, together with Smith, had purchased the necessary supplies for the store, and that he bought the goods at Philadelphia, on his own account and shipped in his own name, and that he excluded the complainant from intermeddling with the partnership effects and from taking charge of the goods of him-

self, and that he dissolved the firm, as he had the right to do, because the complainant was guilty of gross negligence and misconduct in not attending to the business of the firm, and in absenting himself unnecessarily from the State.

A partnership, in its most significant and extended sense, is a voluntary contract of two or more persons for joining together their money, goods labor and skill, or either or all of them, upon an agreement that the gain or loss shall be divided proportionably between them, and having for its object the advancement and protection of fair and open trade. *Gow. on Part. p.* 1. *Story on Part. p.* 1. 1 *Pothier Pand. Lib.* 17, *tit.* 2. *Introd.* 1 *Domat Civ. Law, B.* 1, *tit.* 8, 1*st art.* This is, substantially, the definition given by all the writers on the subject, and it embraces within its terms and spirit all the principal obligations and duties of the contract. It is perfectly clear upon principle, as well as authority that wherever the conditions of the partnership are incapable of being fulfilled, or the fruits arising from the agreement cannot be properly enjoyed, that such a case furnishes a good cause for the renunciation of either party. Under such circumstances the further continuance of the partnership would be productive of serious inconvenience and great injury to the other partners, and might end in their immediate ruin or the utter prostration of the business. *Story on Partnership,* 419, 421. The same doctrine is fully borne out by the civil law, and is illustrated by the case of a partner, where one of the partners is grievously oppressed with insolvency, or where from some bodily infirmity he is unable to discharge his engagements. The jurisdiction of a court of equity in cases of co-partnership flowing from the peculiar trusts and duties growing out of that connection, is of the most extensive and beneficial character. It often declares partnerships utterly void, in cases of fraud, imposition and oppression in the original agreement; or decrees a dissolution of a partnership which was unobjectionable in its origin, but which subsequent causes have rendered onerous and oppressive; gross misconduct, want of good faith, or criminal want of diligence, or such cause as is productive of serious and permanent injury in the partnership concerns, or renders it impracticable to carry on the business, is good ground for a dissolution at the suit of the injured partner. Habitual

Howell *vs.* Harvey.

drunkenness, great extravagance or unwarrantable negligence in conducting the business of the partnership, justifies a dissolution; but then it must be a strong and clear case of positive or meditated abuse to authorize such a decree. For minor misconduct and grievances, if they require redress, the court will interfere by way of injunction to prevent the mischief. *Story on Partnership*, 4, 14, 15.

The application of the principles here stated will test the conduct of the complainant and show whether or not the defendant, John Howell, was justified in renouncing the co-partnership at the time and under the circumstances of the present case. The proof is somewhat contradictory on this point; still the weight of the testimony, both in respect of numbers and the circumstances detailed by the witness, is clearly with the complainant. The articles of partnership show that the defendants were to furnish the funds to keep up the necessary supplies, when it was in their power to do so, and that the complainant was to attend to selling the goods while he remained at home. The terms of this agreement clearly indicate that the parties never contemplated that slight neglect or accidental failures of their respective engagements should dissolve the partnership. The articles of the partnership conclusively show that the parties themselves looked to unequivocal demonstrations of gross acts of abuse and misconduct, where the injury would be imminent and irreparable, to authorize a dissolution. It is true that the complainant was absent in Kentucky upon several occasions, but then, business or his family afflictions seem to have called and detained him there; and the proof is that Howell was apprised of his absence, and so far from objecting to his going the last time to Kentucky, or making it a cause of complaint against him, that upon the eve of starting to Philadelphia to purchase goods, he urged the complainant to endeavor to get back against his return and be ready to receive the goods. This the complainant tried to do, but was detained by the sickness of his family, and did not arrive until after Howells return with the goods, which he claims to have purchased for himself, and until after he had published the dissolution of the co-partnership. Howell, it seems, never intimated a wish or desire to dissolve the co-partnership before he started to Philadelphia. The testimony is that in the opinion of some of the witnesses, the complain-

ant was not a very profitable or attentive partner, but it wholly fails to establish such overt acts of misconduct or gross negligence as would authorize a dissolution of the partnership.

In the present case the partnership was to continue during the pleasure of the contracting parties. It is therefore strictly a partnership at will, and subject to the rules that govern such agreements. Chancellor KENT says, that it is an established principle of the law of partnership, that if it be without any definite period, any party may withdraw at a minute's notice when he pleases, and dissolve the partnership. The existence of engagements with third persons will not prevent the dissolution though their engagements will not be affected by the act. He admits that cases may occur where reasonable notice might be advantageous, but he holds it not to be requisite; and he adds that a party may, in a case free from fraud, choose an unreasonable time for the dissolution. The exception he makes in a case of fraud, indicates to our minds that the rule is not so unbending or universal, as it is laid down, unless the limitation is intended to include those cases where the renunciation is made in good faith and at a proper time. As a general principle, contracts subsisting during pleasure, are naturally and necessarily dissolvable by the mere exercise of the will of either of the parties, and this is the principle according to the civil law under ordinary circumstances, and to such an extent is it carried that a positive stipulation against the dissolution at the will of either of the parties will be held utterly void, as inconsistent with the true nature and intent of such relation. In cases of equity, we think the true rule to be this, that to enable one partner to dissolve at will the partnership, two things must occur, first, the renunciation of the partnership must be in good faith, and secondly, it must not be made at an unreasonable time. This is the doctrine of the Civil Law, and of the code of Louisiana, and Potheir lays down the same rule, and inculcates it in the same manner; for, he says that no partner has a right to prefer his own particular interest to that of the firm, or to take away its profits, or to appropriate them to his own private advantage, and it is upon this principle that, while a partner is engaged in business, courts of equity will restrain him from like pursuits. He has no right to divert from the firm the diligence, skill or capital that

Howell *vs.* Harvey.

rightfully belongs to it. The French Civil Law expresses the whole law upon the subject in the following brief terms: "Dissolution o; partnerships, says Domat, by the will of one of the parties, applies only to partnerships the duration of which is unlimited and is effected by a renunciation notified to all the partners; provided such renunciation be *bona fide*, and not made at an improper time." Renunciation is held not to be made *bona fide*, where one partner renounces in order to appropriate to himself the profits, which the partners are entitled to receive. It is said to be made at an improper time, when the things are no longer entire that were of consequence to partnership, and which should have deferred the dissolution. A partnership for a limited period of time cannot be dissolved at the mere pleasure of one of the parties, within the time prescribed. On the contrary, it only can be dissolved from just motives and for a reasonable cause. There is an implied understanding that the partnership shall continue to the expiration of the term, unless where one partner fails in his engagements, or any habitual infirmity renders him unfit to carry on the business, or where the renunciation is for the benefit of the partnership and not for the advantage of the dissolving partner. The principle here stated is extracted from all the authorities by Justice STORY, and fully approved by him in his complete and admirable treatise upon partnerships. In cases where the partnership is to endure for a limited period of time, the question, whether within that period it may be dissolved by the mere act and will of one of the partners, without the consent of the others, is not definitively or absolutely settled, says Justice STORY, in our jurisprudence. He clearly intimates, if ever such a case should arise, where one partner claimed the right, *sua sponte*, of dissolving the partnership, that he possesses no such power: and he takes the distinction between a court of equity dissolving the partnership, and that of a partner, acting upon his own caprice and pleasure, dissolving the engagement. He admits the doctrine to be somewhat different according to the Roman Law; but he denies that a partner has a right to found his own claim to immediate indemnity and safety by committing a known injury on the interest and privileges of his co-partners: and in this opinion he is fully sustained by many elementary writers and a number of ad-

36

judged. cases of unquestionable authority. *Gow. on Partnership, ch.* 5, *sections* 1, 288, 219, 225, 226.    3 *Collyer on Part.*, B. 1, *ch.* 2, *sec.* 2, *p.* 62; 2 *Edit.    Kent's Com.*, *sec.* 43, *p.* 61; 4 *Edit.    Peacock vs. Peacock,* 16 *Ves.* 56.    *Crashway vs. Maul,* 1 *Swanst.* 495.    *Pearpoint vs. Graham,* 4 *Wash. C. C. Rep.* 234.

The partner who breaks off the partnership with an unfair design, or for selfish objects, discharges his co-partners from all liabilities to him, but he does not thereby free himself from his obligations to them. When he quits the partnership, that he may buy for himself what the *partnership* has a right to purchase, or that he may make a profit for his own advantage and to their prejudice, he is answerable to the community for the loss and damage; and so, if he quits at an unreasonable time, which occasioned a deprivation of profit to the community, it is but right he should repair and make good such loss.    *Potheir Pand. Lib.* 17, *tit.* 2, *n.* 64 *to* 68.    *Domat B.* 1, *tit.* 8, *sec.* 5; *art.* 1 *to art.* 8, *by* STRAHAM.    *Story on Partnership,* 383 *to* 420.

The proof in this case clearly shows that Howell renounced the partnership for his own private advantage, and not to benefit the firm. He said nothing to his partner of his wish to dissolve until his return from Philadelphia.    He then advertised a dissolution of the firm, and seized all the goods and effects into his own hands.    While he was in partnership with Harvey, he had no right to purchase the goods in his own name; for in doing so, he would have acted in bad faith, and besides, Harvey would have been answerable for the purchase.    Was it more to Howell's interest, or to the firm's that the dissolution should take place at the time it did?    The answer to this inquiry is neither difficult nor doubtful.    At the time Howell published the dissolution of the co-partnership, merchants were realizing large profits upon their stock, and goods were sold readily at an advance of fifty to one hundred per cent.    Did he not dissolve the partnership that he might buy for himself and realize this profit?    Were not the other partners of the firm prejudiced in their business, and he benefited by the transaction?    Were not his motives sinister and selfish, and did he not withdraw from the community at an unwarrantable time and in bad faith?    The proof leaves no doubt upon this subject, and if the rules and principles above stated be correct, then he is unquestionably an-

swerable to the complainant for the damages he may have sustained. That damage seems to have been calculated and awarded upon a correct basis. The Chancellor, in rendering the decree, debited and credited each of the partners in conformity to the articles of agreement, with their respective advances and expenditures, taking a list of the notes and accounts furnished by the books, and properly auditing them; and he then charged Howell with fifty per cent. profit upon the whole amount of goods he purchased at Philadelphia, as well as the stock on hand belonging to the firm. In this calculation and adjustment, we perceive no error. Decree affirmed.