### MEYSENBURG v. LITTLEFIELD.

(Circuit Court, E. D. Missouri, E. D. January 10, 1905.)

1. PARTNERSHIP—TERMINATION.

Complainant and defendant entered into a partnership terminable at will, and became selling agents for the J. Company, manufacturers of railway supplies. Thereafter the J. Company sold its physical properties to the F. Steel Company, which operated the plant through a new corporation known as the L. Steel Company. Thereafter complainant and defendant, as a firm, wrote the president of the L. Steel Company, asking confirmation in writing of their employment as selling agents, and for an agreement that such employment should not be terminated except on 12 months' notice, which agreement was confirmed by a reply to such letter. *Held* that, though such correspondence amounted to a contract that the firm's agency should not be terminated except on 12 months' notice, such contract did not prevent defendant from dissolving the partnership by notice to complainant at will.

2. SAME—GOOD FAITH.

Where a partnership was terminable at will, it may be dissolved by one of the partners without regard to the question of good faith or reasonableness of time or circumstance.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Partnership, § 600.]

**8. SAME—EFFECT.**

Where a manufacturing corporation employed a firm to act as its selling agents, the dissolution of the firm operated to terminate the contract of employment.

Boyle, Priest & Lehman, for complainant.

Adiel Sherwood, for defendant.

ADAMS, District Judge. This is a bill to secure the dissolution of a copartnership and an accounting. The case shows that in May, 1891, H. S. Littlefield and E. A. Meysenburg entered into articles of copartnership to carry on the business of selling railway supplies on commission. No fixed term for the duration of the partnership is found in the articles, and none is shown to have been ever thereafter, in terms, agreed upon. They continued together in business until the fall of 1899, when, on November 27th of that year, Littlefield notified Meysenburg that he would terminate the partnership on December 31st of that year. On January 1, 1900, Littlefield formally announced the dissolution, and declined to do further partnership business. For some years prior to 1898 the firm had been, without any written contract, acting as selling agents of the Johnson Company, manufacturers of railway supplies. The last-named company, on or about November 1, 1898, sold its physical properties to the Federal Steel Company. In the year 1898 the Lorain Steel Company, a corporation, was organized, the Federal Steel Company owning two-thirds of its capital stock, and the Johnson Company the balance thereof. On November 1, 1898, the Federal Steel Company began operating the old Johnson plant, acting through the Lorain Steel Company, two-thirds of the stock of the last-named company being then owned by it. The firm of Littlefield & Meysenburg never had any contract with the Lorain Steel Company nor with the Federal Steel Company, but the evidence shows that the firm went on quite as before until the fall of 1899, when, as already stated, Littlefield notified Meysenburg of his purpose to dissolve the partnership.

Complainant contends that this attempted dissolution was fraudulent and void, because defendant had no just ground for dissolving the firm, and because at that time—December 31, 1899—there was a subsisting contract between the firm and the Lorain Steel Company, entitling the firm to at least one year's notice before the selling arrangement, evidenced by the contract, could be terminated. It appears that on October 19, 1898 (before the Federal Steel Company had begun operating the manufacturing plant through the agency of the Lorain Steel Company), Littlefield & Meysenburg wrote a letter to the president of the Lorain Steel Company, as follows:

"Chicago, October 19th, 1898.

A. J. Moxham, Esq., President The Lorain Steel Company, Lorain, Ohio— Dear Sir: As the sale of your company to the Federal Steel Company seems assured, we wish to call your attention to the conversation writer had (with) Mr. Coolidge last April and afterwards confirmed by you, it being that, although we had no written contract with the Johnson Company, the arrangement then existing between us as your selling agents would be continued by the new company (Lorain Steel Company), and we should have twelve months' notice before the arrangement was terminated. Under the present condition

of affairs, we think we should have the agreement as per that conversation in writing and would thank you to write us accordingly.

"Awaiting your early reply, we are,

"Very respectfully,    [Signed]    Littlefield & Meysenburg."

To this letter the president responded as follows:

"Lorain, Ohio, October 20th, 1898.

"Littlefield & Meysenburg, Monadnock Bldg., Chicago, Ill.—Gentlemen: Answering your favor of the 19th, I hereby confirm our agreement that you should have twelve months' notice before termination of present selling arrangement. This should have been put into writing at the time.

"Yours truly,    [Signed]    A. S. Moxham, President,

"The Lorain Steel Company."

It is contended that these letters amount to a contract by which the firm of Littlefield & Meysenburg was to be continued as sales agents of the Lorain Steel Company for an indefinite time, subject to 12 months' notice before the Lorain Steel Company could terminate the relation, and that this contract, by necessary implication, created a partnership between Littlefield and Meysenburg, terminable only after giving 12 months' notice.

I do not find it necessary to pass upon the debatable question whether the two letters quoted, in the light of all the evidence, amount to a contract between Littlefield & Meysenburg on the one hand and the steel company on the other, as claimed. It is contended, and there is evidence tending to show, that these two letters were not written for the purpose of expressing the intention of the writers; but rather for the purpose of affording the firm a favorable equity for the consideration of the Federal Steel Company, which all, at the time, expected would soon become the owners of the manufacturing plant. But, as already stated, it does not appear necessary to determine the issue of fact thus presented. I am of opinion that, even if the letters do amount to such a contract, its existence does not have the effect, by implication of law, to create a partnership which should endure as long as the term of the contract. Neither do the letters impress upon the situation, as it was prior to their being written, a condition that the partnership as it then existed between Littlefield and Meysenburg, should not be terminated without 12 months' notice. Lord Eldon said in Crawshay v. Maule, 1 Swanston, Chan. Rep. 495, 508:

"Without doubt, in the absence of express, there may be an implied, contract as to the duration of a partnership; but I must contradict all authority if I say that wherever there is a partnership a purchase of the leasehold interest of longer or shorter duration is a circumstance from which it is to be inferred that the partnership shall continue as long as the lease. On that argument, the court holding that a lease for seven years is proof of partnership for seven years, and a lease of fourteen of a partnership for fourteen years, must hold that if a partner purchases the fee simple there shall be a partnership forever."

The reasoning in the case State ex rel. The City of St. Louis v. The Laclede Gaslight Company, 102 Mo. 472, 14 S. W. 974, 15 S. W. 383, 22 Am. St. Rep. 789, is substantially to the same effect. If an executory contract in favor of a partnership is in existence at the time of the dissolution of the partnership, it is an asset of the partnership, to be disposed of, in liquidation, like any other asset. In reaching a

conclusion, therefore, on the merits of this case, the partnership between Littlefield and Meysenburg must be treated as a partnership at will, with all the legal incidents appertaining thereto.

In partnerships of this kind it is the right of either partner to determine the relation at any time. The dissolution is no breach of any contract, because the contract itself contains a stipulation, implied by law, that either party may determine the relation at his pleasure. Accordingly, instead of a dissolution being a breach of the contract of a partnership at will, it is, in its proper sense, executing one of the implied stipulations of such a contract. Karrick v. Hannaman, 168 U. S. 328, 18 Sup. Ct. 135, 42 L. Ed. 484. It is said in the last-cited case:

"Even when, by the partnership articles, they have covenanted with each other that the partnership shall continue for a certain period, the partnership may be dissolved at any time, at the will of any partner, so far as to put an end to the partnership relation and to the authority of each partner to act for all, but rendering the partner who breaks his covenant liable to an action at law for damages, as in other cases of breaches of contract."

If, therefore, it be true that the letters passed between the Lorain Steel Company and Littlefield & Meysenburg should be so construed as to create a term of at least one year for the partnership's endurance, even then it was dissolved by the notice given by Littlefield to Meysenburg, and Meysenburg's only redress was an action at law for damages for breach of the contract. But inasmuch as the partnership is one at will, and was dissolved by Littlefield's notice, effective December 31, 1899, there was no breach of any stipulation of the contract, expressed or implied. The dissolution took effect about one year after the Federal Steel Company had assumed the control of manufacturing supplies in the name of the Lorain Steel Company, and it must be assumed that during the year the firm of Littlefield & Meysenburg had been prosecuting their business in selling the product of the factory; whether in the exercise of any right under the contract made by the two letters in question or otherwise does not appear. These letters have been carefully considered, and if, when truly interpreted, they conferred any enforceable right upon Littlefield and Meysenburg (which, for want of mutuality, may be doubted), it seems clear that a dissolution of the firm of Littlefield & Meysenburg would necessarily absolve the Lorain Steel Company, or any successor, from any obligation imposed by the contract. It was the skill and diligence of Littlefield and Meysenburg which the Lorain Steel Company contracted for, and the skill and diligence of Littlefield and Meysenburg working harmoniously with the ambition of promoting their joint interests. In other words, it was the skill and diligence of Littlefield and Meysenburg, as partners, with all that term implies, which the Lorain Steel Company contracted for, and when Littlefield and Meysenburg dissolved that relation the consideration so far failed that the contract ceased to be enforceable; and the firm's action in dissolving the copartnership would be such a breach of the contract in question as to justify the steel company in subsequently ignoring it. The proof shows that the defendant offered to account to complainant for all fruits of the firm's work up to the time of dissolution, December 31, 1899. In fact, I do not understand that any claim

is made that an accounting is necessary, except on the basis that complainant is entitled to his share in the proceeds of Littlefield's agency for the Lorain Steel Company, arising from the fact that Littlefield became the selling agent for that company soon after the dissolution of the firm. In my opinion, complainant has no interest in such proceeds, and accordingly is entitled to no accounting with relation thereto.

The evidence shows that in the fall of the year 1899 Meysenburg was a member of the city council, a branch of the municipal assembly of the city of St. Louis, and that a certain bill was pending before a committee of which Meysenburg was chairman; that Littlefield urged Meysenburg to report the bill (without recommendation, however) for action by the council, claiming that by so doing the interests of the firm might be enhanced. Meysenburg refused to do this. Littlefield regarded such refusal as disloyalty to the firm, and now claims that such conduct of Meysenburg, among other things, justified him in dissolving the firm. Meysenburg claims that because defendant was actuated by selfish motives (possibly by a revengeful spirit) in dissolving the partnership, and because he chose an unreasonable time, while the firm was enjoying a privilege or option entitling it to 12 months' notice before cessation, and because defendant soon after made a contract with the Lorain Steel Company to sell the product of its factory, or, having such a contract in contemplation at the time, gave notice of the dissolution of the partnership, therefore the notice of dissolution was fraudulent, and did not effect the severance of the partnership relation. This theory is that, to dissolve a partnership at will, good faith and reasonableness in time and circumstance must be observed. Counsel have called the court's attention to the case of Howell v. Harvey, 5 Ark. 270, 39 Am. Dec. 376, in support of their theory. The last-cited case shows that the doctrine contended for is the doctrine of the civil law, and in many cases it doubtless subserves the cause of equity and justice; but I am persuaded, from the authorities which have been called to my attention, and especially the decision of the Supreme Court of the United States in Karrick v. Hannaman, supra, and cases therein cited, that the doctrine of the civil law on this subject has never been adopted by courts administering the principles of the common law.

The partnership between Littlefield and Meysenburg was dissolved by the notice of November 27, 1899; such dissolution becoming, according to the notice, effective December 31, 1899. This dissolution, in my opinion, left no enforceable right in the firm of Littlefield & Meysenburg against the Lorain Steel Company. The dissolution itself absolved the steel company from any continuing liability under the contract, even if any such existed.

The result is that the bill in this case must be dismissed.