FREUND, APPELLANT, *v.* MURRAY, RESPONDENT.

(No. 2,702.)

(Submitted October 26, 1909. Decided November 8, 1909.)

[104 Pac. 683.]

*Partnership—Dissolution—Torts—Action Between Partners— Complaint—Insufficiency.*

Partnership—Dissolution—At Will.
　　1. One member of a general partnership, the duration of which is not fixed by agreement, may dissolve the same at any time.
Same—Action Between Partners—Dissolution—Tort—Complaint—Insufficiency.
　　2. *Held,* that a complaint which alleged that plaintiff and defendant had been partners as physicians; that as such they used a hospital owned by the latter; that plaintiff, at the solicitation of defend-

ant, had purchased his interest from a former partner of defendant for $5,000; that about twelve years after the formation of the partnership, defendant, believing that the business, a large portion of which consisted of contracts with employers for the treatment of their employees, was about to greatly increase, and wickedly desiring to exclude plaintiff from such increase, secretly notified the patrons of the firm .that plaintiff's connection with the business would soon cease, and solicited their patronage for himself; that defendant had failed to account for certain proceeds of firm business; that while plaintiff was absent, defendant removed his fixtures, instruments, etc., from the hospital and thereafter excluded him from participation in the management of the partnership affairs,—did not state a cause of action at law, as for a tort, to recover either actual or compensatory damages.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by I. D. Freund against Thomas J. Murray. Judgment for defendant, and plaintiff appeals. Affirmed.

For Appellant there was a brief by *Mr. Jesse B. Roote,* and *Mr. James E. Murray; Mr. Roote* argued the cause orally.

A partner has no more right to commit a tort as against his copartner than an utter stranger to the partnership. Partners may sue each other on any matter not connected with the partnership as freely, and in precisely the same way, as if they were not partners, for the plain reason that outside of the partnership business they are not partners. (Parsons on Partnership, 3d ed., 295; *Bull* v. *Coe,* 77 Cal. 54, 11 Am. St. Rep. 235, 18 Pac. 808; 30 Cyc. 468; *Sewell* v. *Connor* (Tex.), 23 S. W. 555; *Newsom* v. *Pitman,* 98 Ala. 526, 12 South. 412; *Ball* v. *Britton,* 58 Tex. 57; *Murray* v. *McGarigle,* 69 Wis. 483, 34 N. W. 522.)

Respondent violated his duty toward his copartner when he secretly sought to obtain the firm business for himself, before notifying his copartner of his intention to terminate the partnership. He took the law in his own hands and after secretly contriving to obtain the partnership business for himself, sought to eject and evict appellant from the firm premises without settlement or accounting and exposing him to the ridicule and contempt of the community. The renunciation of a partnership must be in good faith, and it must not be made at an unreasonable time. (*Howell* v. *Harvey,* 5 Ark. 270, 39 Am.

Dec. 376.)   The time and manner in which respondent sought
to dissolve the partnership showed fraud, malice and oppression
on his part, and appellant is entitled to exemplary damages.
(*Cole* v. *Tucker*, 6 Tex. 268; *Smith* v. *Sherwood*, 2 Tex. 460;
*Craddock* v. *Goodwin*, 54 Tex. 578.)

*Mr. T. F. Nolan* filed a brief in behalf of Respondent, and
argued the cause orally.

MR. JUSTICE SMITH delivered the opinion of the court.

The complaint in this action alleges that the parties are
physicians and surgeons.   On February 1, 1894, defendant and
one Gillespie, a physician and surgeon, were partners in prac-
tice at the city of Butte.   The principal business of the firm
consisted in treating employees of divers mining corporations
and industrial concerns.   For the purpose of treating the em-
ployees aforesaid, the firm used, as a hospital, a certain building
owned by the defendant Murray.   The plaintiff, at the solicita-
tion of Murray, purchased the interest of Gillespie in the part-
nership for $5,000, and the firm of Murray & Freund was
formed.   For more than eight years thereafter the "contract
work" that came to the firm of Murray & Freund from the
Butte and Boston Consolidated Mining Company comprised the
chief business of the firm.   The arrangement between Murray
& Freund and the employers was that the latter deducted a
certain sum each month from the wages of each employee, and
this sum was paid to Murray & Freund, who continued to use,
as a hospital, the building owned by Murray.   One-third of all
moneys received for such contract work was paid to Murray
for the use of the building "and in payment of certain expenses
in connection with maintaining the hospital," which was known
as the "Murray & Freund hospital."   When plaintiff became
a member of the firm, the monthly income was about $1,200.
Each party gave his best efforts to building up and extending
the business of the firm, the plaintiff devoting his entire time
thereto.   At the time of the happening of the events of which

plaintiff complains, the monthly income of the firm was about
$1,013. The contract work was, under the arrangement between
the parties, to inure to the benefit of the firm; but Murray for
two or three years collected certain amounts for such work
and retained the whole thereof, but for which fact the business
would have amounted to $2,700 monthly. Defendant believed
the business of the firm was about to increase on account of
certain commercial activities in Butte, and, after plaintiff was
ejected, business did in fact increase to about $4,500 per month.
The hospital was during the whole time that the parties were
associated together "used almost exclusively" for the business
of the firm, and Murray, by means of the profits derived by
him from the partnership business, was enabled to greatly en-
large and improve the same. The hospital was also used for
the living apartments and offices of the parties, and the right
to use the same for hospital purposes was a valuable asset of
the firm. During all of the time plaintiff maintained "his office
for meeting, consulting, and treating his patients" in the hos-
pital building. In December, 1906, defendant believed that
the business of the firm would soon largely increase, and wick-
edly desired to exclude plaintiff from sharing in the new busi-
ness, and desired to exclude plaintiff from participation in the
contract work, and take all of the business and profits for him-
self, and exclude plaintiff therefrom, and formed in his mind
a plan to carry his ideas into effect. In furtherance of said
plan, defendant secretly stated to divers patrons of the firm
that plaintiff's connection therewith and with the hospital would
soon cease, and solicited the business of the patrons for himself.
He secretly wrote to divers patrons of the firm that plaintiff
was no longer connected with the hospital or interested in the
business, all without plaintiff's knowledge. On May 3, 1906,
while plaintiff was absent, defendant removed his furniture, fix-
tures, medical instruments, and appliances from the room in
the hospital which plaintiff had used as an office. He notified
divers patrons of the firm that thereafter the employees of
such patrons would not be received or treated in the hospital

if plaintiff had anything to do with such treatment. He published a notice in a newspaper to the effect that plaintiff was no longer connected with the hospital, and that it would thereafter be called the "Murray hospital." The goodwill of the partnership was of great value; and, finally, on or about May 1, 1906, defendant, "after having annoyed, vexed, and harassed the plaintiff as stated, and in divers other ways, and after having pursued for several months prior thereto a course brutal and unfair, and unbearable by anyone of refined sensibilities, maliciously, wrongfully, oppressively, and fraudulently, and in utter disregard of the rights of plaintiff, ejected and excluded plaintiff from participation in the management of the hospital, and ejected and excluded him from participation in all of the partnership business, and denied him all his rights with reference to all partnership business," to his damage in the sum of $40,000. The prayer of the complaint is for $40,000 actual damages, and $40,000 exemplary damages, and costs of suit, and "for such other and further relief as may be proper." General and special demurrers to the complaint were filed by defendant and sustained by the district court of Silver Bow county. Plaintiff elected not to amend, whereupon the court dismissed his complaint and entered a judgment for costs against him. This appeal is from such judgment, and the only question submitted to us is whether the complaint states facts sufficient to constitute a cause of action at law for a tort.

Appellant's contentions are: (1) That the complaint states a cause of action at law, regardless of any statutory provisions relating to partnerships; and (2) that he has pleaded an actionable wrong, by virtue of the provisions of section 5475, Revised Codes, which reads as follows: "In all proceedings connected with the formation, conduct, *dissolution,* and liquidation of a partnership, every partner is bound to act in the highest good faith toward his copartners. He may not obtain any advantage over them in the partnership affairs by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." For the reason that he invokes the foregoing Code

provision—and the tenor of his brief seems also to so indicate —we assume the plaintiff admits that the partnership was dissolved by the acts of the defendant, although there is, in the complaint, no express allegation to that effect, or that defendant gave notice of his desire to terminate the relations between the parties.

Section 5494, Revised Codes, provides that a general partnership may be dissolved by the lapse of the time prescribed by agreement for its duration, or by the expressed will of any partner, if there is no such agreement. The partnership pleaded, being general, could therefore be dissolved in the manner above provided, and, as no time was prescribed for its duration, it could be dissolved by either party at will. "The dissolution of a partnership at will may be implied from circumstances; but when not the result of mutual agreement, there must be notice by the party desiring a dissolution, to his copartner, of his election to terminate the partnership, or his election must be manifested by unequivocal acts or circumstances brought to the knowledge of the other party, which signify the exercise of the will of the former that the partnership be dissolved." (*Spears* v. *Willis,* 151 N. Y. 443, 45 N. E. 849; *Major* v. *Todd,* 84 Mich. 85, 47 N. W. 841; see, also, 30 Cyc. 651.) The supreme court of Arkansas, in *Howell* v. *Harvey,* 5 Ark. 270, 39 Am. Dec. 376, said this: "As a general principle, contracts subsisting during pleasure are naturally and necessarily dissolvable by the mere exercise of the will of either of the parties, and this is the principle according to the civil law under ordinary circumstances.  *  *  *  In cases of equity we think the true rule to be this: That, to enable one partner to dissolve at will the partnership, two things must occur: first, the renunciation of the partnership must be in good faith, and, secondly, it must not be made at an unreasonable time. This is the doctrine of the civil law." The rule laid down in the second paragraph of the foregoing excerpt was not the rule of the common law (see 30 Cyc. 650; *Meysenburg* v. *Littlefield* (C. C.), 135 Fed. 184; *Blake* v. *Sweeting,* 121 Ill. 67, 12 N. E. 67; *Carlton* v.

*Cummins,* 51 Ind. 478; *Koenig* v. *Adams,* 37 Kan. 52, 14 Pac.
439), and is not the rule in this state, either at law or in equity,
unless it is made so by section 5475, Revised Codes, *supra.*
This latter question will be hereafter examined.

Assuming, then, that the partnership was dissolved, and that
defendant could dissolve it by simply expressing his will to that
effect, the question remains: Does the complaint state facts
sufficient to show that in so doing he committed an actionable
wrong against the person or individual property of Freund?
The general elementary rule is that law will not sustain suits
between partners. (Parsons on Partnership, 4th ed., p. 269;
*Zimmerman* v. *Chambers,* 79 Wis. 20, 47 N. W. 947.)    But, says
Professor Parsons (page 302): "So far as there are personal
torts, they can hardly have any relation to the partnership;
and neither party can be affected in right, obligation, or remedy
by the fact that he is a partner.    Of torts in relation to the
partnership or its property, nearly all will be comprehended
either in fraud or waste, for both of which the remedy in equity
is prompt and efficacious."

Bearing in mind that one member of a partnership at will
may dissolve the same at any time, reasonable or unreasonable,
and in the exercise of either good or bad faith, let us examine
the complaint in this action, in the light of the authorities,
for the purpose of ascertaining whether the defendant com-
mitted any actionable wrong against the plaintiff, omitting from
consideration, in so doing, section 5475 of the Revised Codes,
*supra.*    The following is a portion of the text found in 30 Cyc.
468: "For actionable wrongs to the person or to the individual
property of one partner, inflicted by a copartner, an action at
law will lie.    Ordinarily, such an action will not lie for the
sale and forcible removal of firm property, or for its use, in
violation of the wishes of a copartner; but for the tortious de-
struction of firm property, for its detention and use under claim
of sole ownership, for the wrongful ouster of a copartner from
firm premises, or for the wrongful and secret appropriation of

firm property to the use of one partner, the appropriate action at law is maintainable."

The case principally relied upon by the appellant is *Ball* v. *Britton,* 58 Tex. 57. The complaint in that case alleged, in substance: That plaintiff and defendant entered into a copartnership for the purpose of erecting iceworks and manufacturing and selling ice, by the terms of which defendant was to furnish the money necessary to buy machinery and erect buildings, and plaintiff was to superintend the erection of the works and the operation thereof, the net profits to be equally divided between them. That plaintiff did superintend the construction of the iceworks, put the same in operation, and operate successfully for a few months, during which period the profits amounted to $3,000, and would have amounted to $4,000 during the season. That the works would have made clear each succeeding year $5,000. That after the expiration of a few months, by threats to take his life, by calling him a pauper, a liar, and a thief, and ordering a certain third person to knock his brains out if he attempted to superintend the business, defendant forcibly ejected plaintiff from the business and took possession of the same, and continued to hold it, appropriating the profits thereof to his own use, to appellant's damage in the sum of $10,000. Plaintiff afterward amended his complaint by increasing his claim for actual damages and demanding in addition thereto $5,000 vindictive damages. The court said: "Any member of a firm may withdraw from it and [thereby] work a dissolution of the firm. * * * But that is not the state of facts which the petition sets forth. The defendant did not withdraw from the firm. He expelled the plaintiff out of it, and he not only retained all that he had put into it, but he kept all that had been contributed by the plaintiff, except a certain portion of the profits. * * * It is difficult to see how one member of a firm consisting of only two can exclude the other. We think, therefore, the petition sets forth a good cause of action." The court continued: "We think the measure of damages is the value of the services rendered by plaintiff, including his skill,

his time, and labor in constructing and operating the factory, deducting whatever he may have received of the profits, if anything. * * * This would be the measure of his actual damage. Counsel for defendant insist that plaintiff was not entitled to exemplary damages, and refer us to the case of *Railroad Co.* v. *Shirley*, 54 Tex. 125, to the effect that such damages are not recoverable upon a breach of contract. In the case before us there was a breach of contract, certainly; but there was much more. The plaintiff was with every circumstance of contumely excluded from a business in which he had an interest and from premises in which he had a right to work, at least for the time being. The defendant appears to have taken the law into his own hands and to have closed the partnership in a manner entirely too summary to be sanctioned by a court of justice.'' In that case there was no limit fixed for the duration of the arrangement between the parties.

In the case of *Sewell* v. *Connor* (Tex. App.), 23 S. W. 555, the alleged facts were these: The parties mutually agreed to start a newspaper, the defendant to contribute the necessary personal property, and the plaintiff to devote his time, skill, and labor to the operation of the business, and the net proceeds to be equally divided. The paper was established. Plaintiff obtained subscribers and built up a valuable advertising and jobwork business. Considerable stationery was purchased and was on hand when defendant evicted the plaintiff, took possession of all property of the firm, denied plaintiff any rights in the business, and advertised that he had discharged him. No time was fixed during which the partnership should continue. Plaintiff brought his action for services, skill, and labor furnished and expended by him, at the rate of $100 per month from date of the original agreement, and $1,000 exemplary damages. The supreme court, on the authority of *Ball* v. *Britton, supra,* held that his complaint, containing the foregoing allegations, stated a good cause of action.

It will be observed that in both of these Texas cases the court proceeded upon the theory, apparently, that although the defend-

ant had the undoubted right to terminate the partnership at any time, he might not do so in a summary manner. In both cases the court seems to have been of opinion that plaintiff could waive any benefits accruing to him under the partnership arrangement and all claims to partnership property, and sue for the reasonable value of the services performed, together with damages by way of punishment on account of the fact that the defendant had summarily discontinued the partnership relation before the plaintiff had derived any benefits therefrom. This is apparent in the first case, by reason of the fact that the court decided that the plaintiff should be charged with the amount of any profits received, and, in the second, by the fact that suit was brought for the value of the services. It is impossible to reconcile either of these cases with the common-law rule that the defendants could rightfully terminate the partnership at will and at any time, and in both cases the plaintiff was allowed to ignore the partnership agreement, by suing on a *quantum meruit* for his services, and at the same time claim vindictive damages for an alleged breach of that agreement.

In the case of *Newsom* v. *Pitman,* 98 Ala. 526, 12 South. 412, the plaintiff alleged: That he and defendant were copartners; that the defendant maliciously, wrongfully, and without probable cause sued out an attachment against the firm in his own name, and closed up the business; that the matters alleged in the affidavit for attachment were maliciously false; that defendant had no grounds to believe them to be true, and the attachment was made for the purpose of vexing, harassing, and injuring the plaintiff. The theory of the pleader appears to have been that the defendant was guilty of a malicious civil prosecution of the plaintiff. (See *Donnell* v. *Jones,* 13 Ala. 490, 48 Am. Dec. 59; *McKeller* v. *Couch,* 34 Ala. 336; *Stewart* v. *Cole,* 46 Ala. 646; 26 Cyc. 13.) The supreme court of Alabama said: "No attachment would lie at his [plaintiff's] suing against a firm of which he was a member. If the allegations of the complaint are true, the attachment was an illegal and violent procedure of the defendant to accomplish a dissolution of the firm,

to oust one of the partners therefrom, and take possession of the property of the copartnership, without reference to the rights of the plaintiff in it and to his great damage, as alleged in the complaint. It ought not to have been done. The law gives a remedy for the wrong, and the plaintiff has not misconceived his action in the complaint he has filed." The report of the case does not inform us what was claimed by the plaintiff in the way of damages, and no cases are cited in the opinion. Indeed, the learned judge who wrote the same advances no reasons in support of his conclusions.

The only other case of importance cited by the appellant is that of *Murray* v. *McGarigle,* reported in 69 Wis. 483, 34 N. W. 522. In that case the plaintiff was permitted to maintain an action for damages against his copartner and a number of others for conspiracy to injure the business of Murray & McGarigle and drive the plaintiff out of the coal business conducted by the firm. That case is clearly distinguishable from the one at bar. The plaintiff alleged that by reason of the fraudulent conspiracy he was ruined and driven out of the coal business, and was obliged to and did quit and abandon the same, and was deprived of and lost his share of the profits upon any sales and contracts before made by him, and upon any sales and contracts which he might otherwise have made, and was greatly damaged in his reputation and business, to his damage in the sum of $10,000. Equity could afford no relief in such a case. The conspiracy itself had no connection with the business of the firm. Plaintiff sought relief against others than his partner, which relief could only be afforded in a court of law. The court said: "It may be true that this defendant [McGarigle] and the plaintiff were partners in matters affected by the conspiracy; but he is charged as one of the conspirators, which makes his blame greater and less excusable, and he is not interested in the damages. In such case partners may and should sever. If a third person colludes with one partner in a firm to injure the other partner or partners, the latter can sustain an action. * * * The complaint states every fact

necessary to constitute a cause of action against all of the defendants, and they are all charged as being in the conspiracy and are connected by overt acts, singly or together, to carry it out. The damage is the gist of the action, and they all combined to produce the injury.'' We have noticed the foregoing cases thus at length, not for the purpose of criticising them, but with a view to showing that the case at bar does not fall within the facts or the principles involved in any of them.

Let us analyze the complaint: (a) There is no allegation that the firm of Murray & Freund owned any tangible property. (b) Each member appears to have professionally treated employees of the various corporations. (c) So far as appears, the firm had no continuing contract with either employers or employees, and the arrangement for treatment could apparently be discontinued at any time. (d) Murray owned the hospital, and it contained no partnership property. (e) The $5,000 paid by plaintiff for his interest went to Gillespie, and the firm of Murray & Freund continued for about twelve years thereafter. (f) When plaintiff became a member the monthly income was about $1,200, and that income had decreased to $1,013. (g) Murray failed to account to plaintiff or the firm for certain sums collected by him; but the amounts so collected are not set forth. (h) The reason why Murray dissolved the partnership was that he had reason to believe that the contract business would greatly increase, and he desired to be alone so that he might make a larger personal profit therefrom. (i) It turned out that Murray was correct in his expectations. (j) The hospital was used for the living apartments and offices of the parties, and the right to use the same was a valuable asset of the firm; but, so far as the complaint shows, neither Freund nor Murray & Freund had any fixed tenure of occupancy, evidenced by a lease or growing out of any oral agreement. (k) Murray stated to divers patrons of the firm that plaintiff's connection therewith would soon cease, and solicited the business of the patrons for himself. (l) Murray secretly wrote letters to the effect that plaintiff was no longer connected with the hospital or interested in the busi-

ness. (m) In plaintiff's absence Murray removed his furniture, fixtures, medical instruments, and appliances from the room in the hospital which plaintiff used as an office. (n) Defendant notified divers patrons of the firm that thereafter the employees of such patrons would not be treated in the hospital if plaintiff had anything to do with such treatment. (o) Defendant published a notice that plaintiff was no longer connected with the hospital. (p) Murray ejected and excluded plaintiff from participation in the management of the hospital and from all partnership business, and denied him all his rights with reference to all partnership business.

These allegations do not show that Murray & Freund owned any property at all. They certainly owned no real estate and no tangible personal property, and the complaint does not disclose that Murray succeeded in getting for himself any of the plaintiff's practice or patients. Indeed, for aught that is alleged, plaintiff may still be enjoying his share of the so-called "contract work," despite Murray's alleged attempt to monopolize the same. It is true there is an allegation that the contract business increased after plaintiff was ejected, and it may perhaps be inferred that the hospital thereafter enjoyed an income therefrom of $4,500 per month; but there is no allegation that this sum is the total amount of the income from such work, or that plaintiff has lost any patients or income on account of the acts of Murray. There is no allegation that any of the acts of the defendant had the effect of inducing any employer of labor to refuse to allow plaintiff to treat his employees. There is no allegation that any of such acts had any effect on plaintiff's private practice. We undertake to say that the patronage and goodwill enjoyed by a professional partnership attaches to the individual members, rather than to the firm as such, because of the personal skill and experience of the former, and that the latter is, in this respect, different from a commercial partnership. The contract of employment is for personal services, and it is matter of common knowledge that patients and clients continue to employ that physician or attorney in whom

they have the greatest confidence, if they are financially able to do so. There is no averment in the complaint that plaintiff suffered any injury in his reputation or standing, either with his professional brethren or the public at large. No importance can be attached to the fact that Murray induced plaintiff to purchase Gillespie's interest in the firm and to pay the latter $5,000 therefor. The firm of Murray & Freund continued for over twelve years thereafter, and this certainly is a reasonable length of time for such an association to endure. There is an allegation that defendant failed for two or three years to account for the proceeds of certain contract work; but the form of this allegation is such that it is more in the nature of a proper averment in an action for an accounting than in an action at law for unliquidated damages as for a tort. It is alleged that the right to use the hospital was a valuable asset; but there is no showing that the firm or Freund had any such right. The only logical inference which may be drawn from this portion of the pleading is that, by the sufferance of Murray, the firm used the hospital during the continuation of the partnership relation in consideration of the retention by defendant of one-third of the income of the business. Upon the dissolution of the firm this right ceased, and we think there can be no doubt that defendant was within his strict legal rights in removing plaintiff's personal effects from the room in which they were contained, if he desired to do so, provided the property was not damaged in so doing—and there is no allegation that it was. The allegation that Murray ejected the plaintiff from participation in the management of the hospital and from the business means nothing more than that he refused to allow him to continue as a member of the firm. There is no claim that any personal violence was used or threatened. The only other allegations to be considered are those relating to Murray's notifications to the patrons of the firm and to the public, and his solicitation of future business for himself. As heretofore suggested, no showing is made that any of these alleged acts of the defendant resulted in any injury to the plaintiff, except,

perchance, to his feelings. It may, perhaps, be contended with some show of reason that for one member of a professional firm to anticipate the dissolution of the relation, and to solicit the patronage of firm clients or patients after that event shall have taken place, is of doubtful propriety, and contrary to those ethical precepts which should govern the members of a learned profession; but a court of law cannot undertake to adjust the niceties of the situation, and measure out compensation for so delicate and intimate an injury.

2. But it is contended that section 5475, Revised Codes, *supra*, modifies the rule laid down in section 5494, Revised Codes, *supra*, in so far as the latter gives a right to dissolve a general partnership at the will of either partner, and that by virtue of the former section such renunciation must be made in good faith and not at an unreasonable time. Appellant argues that section 5475, Revised Codes, *supra*, supplemented by sections 6040 and 6047, Revised Codes, gives him an action at law for damages, both compensatory and by way of punishment. These latter sections read as follows:

"Sec. 6040. Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault, a compensation therefor in money, which is called damages."

"Sec. 6047. In any action for a breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

What has already been said in the process of analysis of the complaint practically disposes of this contention in so far as this case is concerned. If the defendant has not been guilty of any actionable wrong, no damages may be recovered, either compensatory or for the sake of example. It is unnecessary to construe section 5475, Revised Codes, *supra*, in order to reach a conclusion here; but our examination of the authorities has resulted in the discovery of the case of *Richards* v. *Fraser*, 122 Cal. 456, 55 Pac. 246, which was an action in equity for an

accounting between partners and other relief. In that case a section of the California Code, identical with our section 5475, Revised Codes, *supra,* was applied by the court so as to relieve the plaintiff from the effects of a release given by him to his copartners, he having averred that the same was obtained by concealing from him certain material facts relating to the partnership affairs, and by threats to foreclose a mortgage in the event that he refused to execute the release. The court said: "If the allegations of the complaint are true, then, when plaintiff gave defendants the said acquittance, they obtained a very decided advantage over him by concealing information of their actions, which, as his partners and as trustees for him, they ought to have divulged. Withholding such information was equivalent to false representation operative at the time of the release. * * * "

The case of *Howell* v. *Harvey, supra,* is cited in the brief of appellant. That was an action in equity for an accounting and for general relief, and the court, after enunciating the principle of the civil law that the renunciation by a partner must be in good faith and not at an unreasonable time, held that one partner should be held to account to his copartner for the profits on a stock of goods bought for his own account after he had declared the partnership relation at an end, acting, however, in bad faith, and at an unreasonable time. We have no doubt that in a proper case equity can and will relieve a partner from the injurious effects of any misrepresentation, concealment, threat, or adverse pressure of any kind, of which his partner has been guilty, *in the partnership affairs.* It is significant that the words italicized are found in the statute; but as the facts in this case are not sufficient to give a court of law jurisdiction, we refrain, as aforesaid, from committing ourselves to any definite interpretation of the statute, section 5475, Revised Codes, *supra.*

The judgment of the court below is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.