# Richmond

**Winston F. Lindsay and John H. Shortridge v. P. F. Bevins.**

January 14, 1963.

Record No. 5510.

Present, All the Justices.

The opinion states the case.

*H. Claude Pobst* (*Pobst & Coleman*, on brief), for the appellants.

*C. H. Combs* (*Combs & Street*, on brief), for the appellee.

BUCHANAN, J., delivered the opinion of the court.

■ Winston F. Lindsay and John H. Shortridge, complainants, brought this suit in equity against P. F. Bevins for a dissolution of their partnership and for an accounting and division of the partnership assets, particularly of the earnings under a lease on a coal loading dock, involved in the partnership, which Bevins had renewed in his own name. Bevins filed an answer asserting that the complainants had breached the partnership agreement and were not entitled to any interest in the renewed lease.

Depositions were taken and on consideration of the pleadings and testimony the court below held, for reasons stated in a written opinion, that the complainants had failed to perform the partnership agreement on their part, that the partnership undertaking had terminated prior to the renewal of the lease and complainants were not entitled to any interest therein. Accordingly a decree was entered dismissing the bill and the complainants appeal.

By a writing dated March 29, 1955, Lindsay, Shortridge and Bevins agreed to form a partnership "to buy, sell, handle, ship and otherwise dispose of coal," in the name of Belridge Coal Company, the contract reciting that under even date, in the name of Bevins, the parties had acquired a lease on a coal loading dock. Each partner was to have one-third interest in the partnership, share equally in profits, losses and expenses, and use his best efforts to further the interests of the partnership without compensation except on unanimous agreement.

Prior to the formation of the partnership Bevins had negotiated for and, at the time of the formation of the partnership, as alleged in the complainants' bill, was the owner of a lease on a coal loading dock and side track on the Norfolk and Western Railway, in Buchanan county, made to him by Vansant Coal Corporation on March 29, 1955, for a term beginning April 1, 1955, and ending April 14, 1959, but with the right to either party to cancel it at any time on sixty days' notice. This lease was for a rental of $1,040 a month and was not to be assigned or subleased without the written consent of the lessor.

The partnership contract did not describe the purpose of the partnership or define the rights and duties of the partners except as above stated. Parol evidence was therefore admissible to show additional independent facts, contemporaneously agreed on, not inconsistent with or contradictory of the written contract. 7 Mich. Jur., Evidence, § 154, p. 515; *Reed* v. *Dent*, 194 Va. 156, 163, 72 S. E.

2d 255, 259. The contract also did not prescribe any time for the duration of the partnership. Complainants state in their brief that Bevins had the right to dissolve the partnership "at his wish". See Code § 50-31 (1) (b); *Stutzman* v. *Nash & Son*, 189 Va. 438, 446, 53 S. E. 2d 45, 49.

The complainants alleged in their bill that they controlled and had the right to sublease for the owners thereof the coal on several hundred acres of land in Buchanan county belonging to the estates of Stinson and Williams; and that in the formation of the partnership it was agreed that it would be advantageous to the partnership interests for the complainants to furnish a supply of said coal to be shipped over the dock and likewise it would be advantageous for the defendant to furnish a dock over which to ship said coal, so as to give a continuous and better market for the coal produced from the lands controlled by the complainants. Lindsay, one of complainants, testified that they were interested in having a place to load the coal which they had control of, that they had the coal and no dock and Bevins had the dock, and that these matters were discussed with Bevins when the contract was made. Bevins testified that Lindsay and Shortridge stated that they controlled the coal on the Stinson and Williams land and could provide therefrom all the coal the dock could handle.

Lindsay further testified that each partner undertook to do what he felt best qualified to do and under this arrangement Bevins sold the coal, Shortridge ran the dock, weighed the coal and kept the records of the cars, and Lindsay kept the books and paid the bills. While the contract provided that none of the partners was to receive any compensation for his work, it was later agreed that Shortridge be paid $200 a month.

At the beginning, said Lindsay, Bevins found a very receptive market but as time went on it became more difficult to sell the coal, until finally, along in the summer of 1958, they had to shut the dock down. Shortridge also testified that the operation of the partnership ceased because they could not sell the coal,—"Frank [Bevins] wasn't selling the coal, so there wasn't nothing we could do". His salary, he said, was discontinued and he "quit and went on another job". Bevins testified that the partnership operated the dock until approximately March 15, 1958, and at that time it ceased operations and no coal was delivered to the dock and none was shipped after that time.

After the dock had remained idle for several months an arrangement was made with A. M. Ratliff, Jr., by which he took over the

operation of the dock in November, 1958, and agreed to pay the monthly rental of $1,040 and ten cents a ton for the coal loaded over the dock. Ratliff thereafter paid the monthly rental to Bevins, who in turn paid Vansant, and Ratliff distributed the ten-cent tonnage payment in equal shares to Lindsay, Shortridge and Bevins. This continued until April 15, 1959, the expiration date of the lease of the dock from Vansant to Bevins.

Prior to April 15, 1959, Bevins had been notified by letter from Vansant that his lease would not be renewed. Ratliff testified that Vansant's manager told him that he was canceling the lease to Bevins and suggested that Ratliff make any further arrangements about the dock with him, but later the manager told Ratliff he had decided to let the dock go back to Bevins.

Accordingly a new lease for the dock and its appurtenances was made by Vansant to Bevins, dated April 15, 1959, to expire April 15, 1963, unless sooner canceled, and containing the same provisions as to rent and other matters as contained in the original lease to Bevins of March 29, 1955. After receiving this lease Bevins continued the arrangement with Ratliff for operating the dock, but due to the bad conditions of the coal market the tonnage royalty was reduced to five cents. This tonnage royalty was paid by Ratliff to Bevins until July, 1960, when Bevins' lease on the dock was canceled by Vansant. The amount so paid by Ratliff to Bevins individually was $7,222.55 and appellants contend that this amount should be equally divided among the three partners, and they ask in this proceeding for judgment for two-thirds thereof, with interest.

The appellants contend that they are entitled to share in the tonnage royalty paid Bevins under the new lease to him on the principle that partners occupy a fiduciary relationship to each other and one partner may not acquire an interest in the subject matter of the relationship adverse to the other partners, and if he does so equity will regard him as a constructive trustee and compel him to account for profits derived thereby; *Horne* v. *Holley*, 167 Va. 234, 188 S. E. 169. They claim that the opportunity of renewal of the lease on the dock was an asset of the partnership and that when renewed to Bevins the renewal inured to the benefit of the partnership and was impressed with a trust for its benefit. 40 Am. Jur., Partnership, § 134, p. 222.

The trial court recognized the validity of these principles in its opinion but held that they had no application to the situation shown by the evidence in this case because Lindsay and Shortridge had

failed to furnish coal to the dock in accordance with their agreement; Shortridge had quit the work and gone to other employment; the dock had closed down, the business and undertaking of the partnership had ended, the partnership had been terminated and dissolved and only the remaining term of the lease of the dock to Bevins remained as an asset of the partnership for winding up its affairs. See *Hurley* v. *Bennett*, 163 Va. 241, 253, 176 S. E. 171, 175; 4. Mich. Jur., Contracts, § 68, p. 423; 12 Am. Jur., Contracts, § 338, p. 894; 17 C.J.S., Contracts, § 452, p. 932.

Such right as the complainants had to the coal on the Stinson and Williams land was through William Gleason, who had a lease from the owners dated April 22, 1953, to run for five years, with the right to renew on written notice, which was not shown to have been given. Gleason died on March 15, 1955, prior to the formation of the partnership between complainants and Bevins, and after his death the owners of the Stinson and Williams land notified his widow and children that the Gleason lease was no longer in effect and demanded possession of the leased premises. About the same time the personal representative and heirs of Gleason brought suit against Lindsay and Shortridge over their continued mining of the coal, which was afterwards settled in some way not disclosed in the record.

It clearly appears from the evidence that the complainants did not have control of the coal on the Stinson and Williams land, as admittedly they represented to Bevins that they did have, and by which they were to make their contribution to the partnership. Not only so, but it also appears that the complainants had made subleases for the mining of the coal on parts of the Stinson and Williams land under the terms of which their sublessees were not obligated to ship their coal over the Bevins dock but were free to take it where they desired.

As said by the trial court, whether the complainants were obligated by the partnership agreement to supply the dock with all the coal mined from the Stinson and Williams tracts, as claimed by Bevins, it was at least their obligation to supply such quantity as they could have supplied if they had had control of the coal on the Stinson and Williams boundary as they represented to Bevins. The evidence is that the dock was not fully supplied with coal from the beginning. Lindsay testified that they would have used more coal if they had had it "at certain times," and "we could have sold more coal nearly all the time until towards the last". Bevins testified that "at the time we started up there and for quite some time after we started we didn't receive one-third enough coal to load out the train".

The nature and purpose of the partnership contract, as further said by the trial court, "contemplated the continued existence of a supply of coal from the Stinson and Williams tract, from which a condition was implied that, if the condition failed, or became impossible of performance, the contract should no longer be effective".

The failure of the complainants to deliver any coal to the dock after the spring of 1958, combined with the deteriorated condition of the coal market, resulted in the closing of the dock and the termination of all partnership activities. No further duties were performed by Lindsay; no further work was done by Shortridge, who left and took another job; and there was no coal to be sold by Bevins, who was left responsible for the rent of $1,040 a month until April 15, 1959, when his contract would expire. Thus the situation continued from March until November, 1958, when it was agreed to turn the dock over to Ratliff, who paid the rental to Bevins for the lessor, and the tonnage royalty to the members of the partnership until the end of Bevins' lease on April 15, 1959.

Prior to transfer of the dock to Ratliff the purpose of the partnership had failed and the undertaking contemplated by the partnership agreement had terminated. One of the partners, Shortridge, had already abandoned the enterprise and the other two had neither the material nor the opportunity to perform the duties they had assumed in the partnership agreement. The only asset of the partnership then remaining was the unexpired term of the lease on the dock, and by agreement this was taken over by Ratliff and each partner received his share of the amount paid by Ratliff for the unexpired term of the lease. This lease was the property of Bevins. He had contributed it to the partnership in return for the agreement of Lindsay and Shortridge to supply the dock with coal from a source which they claimed to control. The sale of this coal was to be the source of the expected profit which the partners were to share equally under the partnership agreement. The coal was not furnished and the services were not performed by Lindsay and Shortridge, and the purpose of the partnership had failed.

It would be highly inequitable, after Bevins' contribution to the partnership had been fully furnished and completely used up, to require him to make a further contribution by taking from him two-thirds of the earnings of his new lease on the dock and give it to the complainants without any compensating consideration or service contributed by them. If the complainants are entitled to the interest

they claim in the present renewal they could claim with equal right an interest in any future renewal.

"The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." Code § 50-29.

"Dissolution is caused * * by the termination of the * * particular undertaking specified in the agreement." Code § 50-31 (1) (a).

We agree with the statement in the opinion of the trial court that "[a]fter the dissolution of the partnership and after the expiration of the lease on April 15, 1959, which terminated all equity which the partnership had in the lease, no further equitable expectancy of renewal remained in the partnership, and when Bevins thereafter obtained another lease in his own name for his own use, he did not violate any obligation to the partnership".

The decree dismissing the complainants' bill is

*Affirmed.*