KRUSE, Appellee,

v.

VOLLMAR et al., Appellants.

[Cite as *Kruse v. Vollmar* (1992), 83 Ohio App.3d 378.]

Court of Appeals of Ohio,
Wood County.

No. 92WD019.

Decided Nov. 20, 1992.

*James Hammer,* for appellee.

*John Potts,* for appellants.

ABOOD, Judge.

This is a consolidated appeal from judgments of the Wood County Court of Common Pleas in an action involving claims and counterclaims for breach of a partnership agreement.

Appellants set forth eight assignments of error:

"I It constituted error to grant a judgment for monetary damages.

"II It constituted error to find that plaintiff owns an undivided one-half interest in the real estate.

"III It constituted error to award plaintiff punitive damages.

"IV The award of punitive damages is against the manifest weight of the evidence.

"V It constituted error to find that defendants' breach of contract was antecedent to plaintiff's breach of contract, and that defendants waived plaintiff's breach of contract.

"VI It constituted error not to award damages to defendants on their counterclaim.

"VII It constituted error not to order a dissolution of the partnership.

"VIII It constituted error to grant plaintiff judgment for the amount of compensatory damages awarded."

The facts that are relevant to a determination of the issues raised by this appeal are as follows. Prior to July 31, 1989, defendants-appellants, David J. and Bonnie Vollmar, owned and operated a tavern in Dunbridge, Ohio, which they called the "Central Inn." They also owned the land on which the Central Inn was located. On July 31, 1989, the Vollmars entered into a land installment contract ("LIC") and a sale and purchase agreement ("SPA") with plaintiff-appellee, Kenneth R. Kruse. Pursuant to those agreements, Kruse was to pay $17,500 ($5,000 in down payment and the rest in monthly installments) in exchange for an undivided one-half interest in the real estate and an equal partnership in the tavern, respectively. The SPA provided further " * * * that all business profits and losses shall be divided in the same percentage as owned by the parties." The parties verbally agreed that Kruse would provide one-half of the labor necessary to operate the business by hiring an employee at his own expense to work during the week and by personally working on Saturdays. Almost immediately, a number of disputes and arguments concerning the business took place between Kruse and the Vollmars. On December 2, 1989, during one such argument, Kruse told David Vollmar that "I was either going to buy him out or I wanted him to buy me out * * * " and that "I was taking my stuff

* * *." That night Kruse removed all of his personal belongings from the tavern " * * * except a couple of items * * *." Thereafter, the parties attempted to reach an agreement by which the Vollmars would purchase Kruse's interest in the partnership. When this proved unsuccessful, the Vollmars locked Kruse out of the business premises and eliminated his name from the business checking account, after which Kruse continued to insist that he was still a partner and the Vollmars continued to accept Kruse's monthly payments.

On July 23, 1990, Kruse filed his complaint in which he set forth two claims for relief. His first claim is that the Vollmars willfully and wantonly breached the LIC and SPA by failing to distribute profits of the business or provide an accounting as to business receipts and expenditures. His second claim is that the Vollmars willfully and wantonly breached their fiduciary duties " * * * under principles of partnership law * * * " by not distributing or accounting for profits and by denying him access to the business premises and records. The complaint demanded judgment on the first claim for relief for an unspecified amount of compensatory and punitive damages and on the second claim for relief for " * * * a full written accounting * * * "; the complaint, however, did not contain a demand for dissolution of the partnership. On August 30, 1990, the Vollmars filed an answer and a counterclaim which alleged three claims for relief: (1) breach of partnership obligations; (2) conversion of partnership property; and (3) interference with partnership business. The counterclaim demanded judgment for compensatory and punitive damages and sought " * * * an order judicially dissolving the partnership agreement * * *."

On September 14, 1990, Kruse filed an amended complaint which in all relevant respects was the same as his original complaint. On September 19, 1990, the Vollmars filed their answer to Kruse's amended complaint but no counterclaim.

On May 30, 1991, the case preceded to trial to the court. On July 11, 1991, the trial court filed its decision and judgment entry which awarded judgment to Kruse on his first claim for relief in the amount of $5,631.88 for compensatory damages, $2,000 for punitive damages and $3,000 for attorney fees; the court found further that although " * * * it is in the best interest of the partnership that this business entity cease as a partnership, * * * the plaintiff did not seek the dissolution of the partnership and the Court does not order it" as part of its decision. The trial court also included the following relevant findings:

" * * * [T]he Vollmars did exclude the plaintiff from management decisions. This conduct has violated the terms of the purchase agreement.

" * * * The plaintiff stated he was through and walked out of the business taking with him his own personal items from the bar. This act violated terms of the agreement although his act was precipitated by breach of the contract by the defendants.

" * * * [T]he defendants waived any breach by the plaintiff and confirmed the continuing interest of the plaintiff by receiving the plaintiff's purchase checks monthly, but the defendants violated the agreement by excluding the plaintiff * * *.

" * * * *

" * * * Generally punitive damages are not recoverable in breach of contract law suits but an exception is made when the breach amounts to an independent willful tort. [Citation omitted.]

"Under the facts of this case when the one partner was refused permission to participate in the business, the door locks were changed, the checking accounts were changed, but the partner's monthly payments still were demanded and received, punitive damages are authorized."

On August 12, 1991, the Vollmars filed their appeal from this judgment.

Since the trial court's July 11, 1991 decision and judgment entry did not dispose of Kruse's second claim for relief or the Vollmars' counterclaim, on March 3, 1992, it filed a "SUPPLEMENTAL AND FINAL JUDGMENT ENTRY," which ordered that:

"1. The judgment entry of July 11, 1991 is reaffirmed.

"2. The defendants are ordered to, within thirty days, account to the plaintiff for receipts and expenditures of the business since December 31, 1990.

"3. The defendants' counter-claim seeking a dismissal of the plaintiffs' [sic] claim, compensatory damages and dissolution of the partnership by the Court is denied and is dismissed."

The trial court additionally found that R.C. 1775.31 is " * * * inapplicable to the facts of this case."

On March 11, 1992, the Vollmars filed their appeal from this judgment.

On March 19, 1992, this court filed a decision and journal entry in which we *sua sponte* consolidated the two appeals. This case is now before this court on the consolidated appeal from the July 11, 1991 and March 3, 1992 judgments.[1]

---

1. Ordinarily, this court would make a determination as to whether the July 11, 1991 judgment was final and proceed therefrom to determine the procedural propriety of the March 3, 1992 judgment. In the context of this appeal, however, and since neither party objects to a consideration of both judgments, it would serve no purpose other than to waste time and resources for this court to either dismiss one appeal or force the parties to refile the record. For that reason, we will proceed to a determination of this consolidated appeal as though the two judgments of the trial court were merged into one.

## I. DISSOLUTION

This court will first address the Vollmars' fifth and seventh assignments of errors, since they both relate to the preliminary issue of whether and, if so, when, the partnership should be dissolved.

In support of their fifth assignment of error, the Vollmars argue that Kruse was the first to breach the SPA by failing to work on Saturdays; that Kruse expressed a desire to dissolve or terminate the partnership on December 2, 1989; that Kruse's actions precluded him from participating further in the partnership; that Kruse's " * * * antecedent failure to work on Saturdays justified Defendants' excluding him from management decisions"; and that their acceptance of payments from Kruse under the LIC did not waive Kruse's breach under the SPA.[2]

In support of their seventh assignment of error, the Vollmars argue that the trial court should have recognized that a dissolution occurred *ipso facto* either on or prior to December 2, 1989, by the actions of the parties, or on August 30, 1990, when they filed their counterclaim, and that as of either of these dates Kruse was no longer entitled to share in the partnership profits.

Although the trial court did not specifically address the issue of whether any of the parties' actions caused a dissolution of the partnership, it did find that their acts and conduct after December 2, 1989 were inconsistent with a recognition on their part that they considered the partnership to have been dissolved *ipso facto* on that date. The issue, therefore, is whether the partnership should have been dissolved by the court and, if so, as of what date.

"A partnership is an association of two or more persons to carry on as co-owners a business for profit." R.C. 1775.05. It is personal and consensual in nature and continues only so long as the parties mutually agree. It may be dissolved at any time by the express will of any partner, whether or not such dissolution is in contravention of the partnership agreement. No legal policy is subserved by compelling a person to continue in a partnership relationship against his will. R.C. 1775.30(A)(2) and (B); 1 Rowley on Partnership (2 Ed.1960) 586–587 and 598–599, Sections 31.1(b) and 31.2; Reuschlein & Gregory, The Law of Agency and Partnership (2 Ed.1990) 351, Section 229(G).

---

**2.** On January 24, 1992, the Vollmars filed their appellate brief. On February 27, 1992, Kruse filed his answer brief and, on March 10, 1992, the Vollmars filed their reply. On April 13, 1992, the Vollmars filed a "SUPPLEMENTAL BRIEF" " * * * as a consequence of the March 3, 1992 Judgment." This latter brief raised some supplementary arguments, but did not set forth any additional assignments of error. All references made by this court throughout this opinion to the arguments advanced by the Vollmars in support of each respective assignments of error are collective of the total arguments raised in their three briefs, unless otherwise indicated.

■ In determining whether to decree a dissolution, a court is not limited to considering only those events listed in R.C. 1775.31. "[I]t is often necessary to resort to judicial decree to determine whether or not there has been a dissolution previously caused by termination, act or event * * *." Rowley on Partnership, *supra*, at 610, Section 32.0.

■ "The dissolution of a partnership is the change in the relation of the partners caused by the partner's ceasing to be associated in the carrying on as distinguished from the winding up of the business." R.C. 1775.28. It is caused when a partner expresses his will to terminate the partnership. An expressed desire to terminate may be indicated directly, as by notice, or impliedly by conduct indicating abandonment, withdrawal, exclusion or expulsion. Rowley on Partnership, *supra*, at 587–588 and 599–600, and 597–598, Section 31:1(d).

■ Where appropriate, equity will enjoin a dissolution for a time. *Id.* at 598–599. It is particularly appropriate in cases where the acts and conduct of the partners claiming dissolution are inconsistent with a recognition upon their part that they considered the partnership to have been dissolved *ipso facto* on the date of a breach or exclusion, or where the partnership agreement contained no clause conferring upon them the power to expel. *Zeibak v. Nasser* (1938), 12 Cal.2d 1, 16–17, 82 P.2d 375, 383; *Liechty v. Liechty* (N.D.1975), 231 N.W.2d 729. In such cases, the partnership will not be dissolved *ipso facto* as of the date of the breach or exclusion, but will continue until the final closing of its affairs. At such time, the excluded partner is entitled to an accounting and to his share of the profits. *Id.*

■ Upon consideration of the entire record of proceedings that was before the trial court and the law as set forth above, this court finds: (1) it is undisputed that the Vollmars want to dissolve their partnership relationship with Kruse; (2) the partnership must be dissolved; (3) the cause of the dissolution must be determined in the first instance by the trial court and will, in turn, determine the rights and liabilities of the parties pursuant to R.C. 1775.01 *et seq.;* (4) the trial court found that after December 2, 1989, the Vollmars " * * * confirmed the continuing interest of the Plaintiff (in the partnership) * * *"; since this finding is supported by competent, credible evidence, it will not be disturbed; (5) since this conduct of the Vollmars which is inconsistent with dissolution continued up until trial and since the parties have continued in their relationship as partners in accordance with the trial court's judgments, the date on which the parties' interest in the partnership is to be finally ascertained is the date on which the trial court enters its judgment of dissolution consistent with this opinion; and (6) until that time, Kruse is entitled to his share of the profits.

Accordingly, the Vollmars' fifth and seventh assignments of error are well taken as to the dissolution of the partnership.

## II. PUNITIVE DAMAGES

In support of their third and fourth assignments of error, the Vollmars argue that Ohio law does not recognize that a breach of a fiduciary duty in the context of a partnership constitutes an independent, willful tort; and that unless a defendant's actions in breaching a contract also amount to an independent cause of action in tort, the general rule that punitive damages are not recoverable in a breach of contract action applies.

Kruse responds that he is entitled to punitive damages on the basis of the Vollmars' actions in breaching the *contract*, not on the basis of breach of a *fiduciary duty;* and that the Vollmars' actions in summarily excluding him from the business constitutes an independent, willful tort.

The general rule in Ohio is that irrespective of the motive on the part of the defendant and no matter how willful the breach, punitive damages are not recoverable in an action for breach of contract. *Digital & Analog Design Corp. v. N. Supply Co.* (1989), 44 Ohio St.3d 36, 45–46, 540 N.E.2d 1358, 1366–1367; and without an award of punitive damages, there can generally be no award of attorney fees. *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 662, 590 N.E.2d 737, 742.

This court has recognized an exception to the general rule, however, and held that where the actions which constitute the breach of contract also amount to an independent, willful tort, punitive damages may be recovered upon the necessary showing of malice. *Ali v. Jefferson Ins. Co.* (1982), 5 Ohio App.3d 105, 107, 5 OBR 220, 222–223, 449 N.E.2d 495, 497–498; see, also, *Sweet v. Grange Mut. Cas. Co.* (1975), 50 Ohio App.2d 401, 406–407, 4 O.O.3d 399, 401–402, 364 N.E.2d 38, 41–42. In *Ali,* we found that an insured under a contract of insurance is not limited to recovery of contract damages from his insurer where the insurer breaches its duty to deal in good faith, and that such a breach will give rise to a cause of action sounding in tort for which punitive damages are recoverable.

Subsequently, in *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, the Supreme Court of Ohio recognized this exception in the insurer-insured context, but carefully explained that:

"The imposition of the duty of good faith upon the insurer is justified 'because of the relationship between the * * * [insurer and the insured] and the fact that in the insurance field the insured usually has no voice in the preparation of the insurance policy and because of *the great disparity between the economic positions of the parties to a contract of insurance;* and furthermore, at the time

an insured party makes a claim he may be in dire financial straits and therefore may be especially vulnerable to oppressive tactics by an insurer seeking a settlement or a release. See, also, *Motorist Mut. Ins. Co. v. Trainor*, 33 Ohio St.2d 41 [62 O.O.2d 402, 294 N.E.2d 874] * * * (1973) * * *.' *Battista v. Lebanon Trotting Assn.* (C.A. 6, 1976), 538 F.2d 111, 118 (construing Ohio law)." (Emphasis added.) *Id.* at 275, 6 OBR at 340, 452 N.E.2d at 1319.

In *Suver v. Personal Serv. Ins. Co.* (1984), 11 Ohio St.3d 6, 11 OBR 5, 462 N.E.2d 415, the Supreme court of Ohio considered the propriety of a "bad faith" action against the issuer of a financial responsibility bond, and found that the differences between the issuance of an insurance policy and the issuance of a financial responsibility bond " * * * are not so pronounced as to require the creation of a cause of action in one case and its denial in the other. Precisely the same policy arguments and rationale hold true in both settings. *In both cases there is a great disparity of financial resources.*" (Emphasis added.) *Id.* at 7–8, 11 OBR at 6–7, 462 N.E.2d at 417.

In *Deist v. Timmins* (1986), 32 Ohio App.3d 74, 513 N.E.2d 1382, the Franklin County Court of Appeals declined to establish a cause of action in tort for breach of fiduciary duties between partners. In so doing, that court noted that, although the relationship between partners, like the relationship between insurer and insured, requires good faith and fair dealing, the policy justifications for making a breach thereof an independent tort are not present in the partnership context. Partners stand on equal footing and enter into their relationship voluntarily. "Thus, the relationship between one partner to another is considerably different from the relationship between an insurer and the insured and, consequently, so are the available remedies." *Id.* at 77, 513 N.E.2d at 1385.

While there is some limited support for the proposition that punitive damages are recoverable where a partner summarily excludes his copartner from the partnership business, see, *e.g., Freund v. Murray* (1909), 39 Mont. 539, 104 P. 683, we decline to adopt such a rule because: (1) Ohio has not recognized summary exclusion of a partner from the partnership as an independent tort; and (2) Ohio's Uniform Partnership Law ("UPL") specifically covers the situation involving exclusions from the partnership and, since the UPL is intended to be comprehensive, its provisions should apply. See, *e.g.*, R.C. 1775.17(E), 1775.-21(A), 1775.30(A)(4), and 1775.37(B); see, also, *Staszak v. Romanik* (C.A. 6, 1982), 690 F.2d 578, 583.

Upon consideration of the foregoing, this court finds that the trial court was without legal authority to award punitive damages and attorney fees in this case and erred in so doing.

Accordingly, the Vollmars' third and fourth assignments of error are well taken.

## III. DEMAND FOR JUDGMENT

In support of their first assignment of error, the Vollmars argue that Kruse is not entitled to a judgment of monetary damages because his complaint did not include a demand setting forth a specific monetary amount, pursuant to Civ.R. 54(C); and that the exception to Civ.R. 54(C) in the case of a partnership accounting is not applicable because the exception applies only to a final accounting upon dissolution in which all rights under the partnership agreement are explored. The Vollmars argue in the alternative that, if this court recognizes the exception as being applicable to this case, we should reduce the trial court's judgment by $5,000, the amount awarded for punitive damages and attorney fees, because that amount is based on an independent tort and not an accounting.

In *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 28, 20 OBR 213, 214, 485 N.E.2d 704, 706, the Supreme Court of Ohio held that pursuant to Civ.R. 54(C),[3] "[n]o damages awarded may exceed the prayer that is in effect on the sixth day prior to trial."

In *Moore v. Sweda* (1985), 27 Ohio App.3d 38, 27 OBR 40, 499 N.E.2d 371, the Medina County Court of Appeals held that an exception to Civ.R. 54(C) exists in an action for an accounting. That court reasoned that an action for an accounting, pursuant to R.C. 1775.21, " * * * seeks a determination by a court of what may be due the respective parties as a result of the relationship between them. This accounting would explore all rights under terms of the partnership agreement, not just monetary rights, but clearly the ascertainment of monies due is an essential part of the process." (Citations omitted.) *Id.* at 39, 27 OBR at 41, 499 N.E.2d at 373.

Although the complaint in *Moore* sought to have the partnership dissolved, as well as an accounting, there is no indication by the court that a dissolution is required in order for the exception to apply. R.C. 1775.21 does not require that the partnership be dissolved in order for a partner to have the right to a formal accounting as to partnership affairs.

---

3. Civ.R. 54(C) provides:

"A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled; however, a demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand unless he amends his demand not later than seven days before the commencement of the trial. Additional service of process is not necessary upon such amendment."

Upon consideration of the foregoing, this court finds that the trial court did not err in awarding monetary damages to Kruse in excess of that demanded in his complaint.

As to the Vollmars' alternative argument that we should find the award of punitive damages and attorney fees to be beyond the reach of the accounting exception, this argument is rendered moot by our findings on their third and fourth assignments of error.

Accordingly, the Vollmars' first assignment of error is not well taken.

## IV. THE REAL ESTATE

The trial court made the following additional findings:

"[T]he total agreement between the [parties] * * * included the land contract for a ½ interest in the real estate and a purchase and sale agreement for ½ of the personal property involved in the business including fixtures [sic] equipment and the inventory * * *. The agreement further provided that * * * Mr. Kruse was to receive one-half of the net profits of the business if any and one-half of the losses would be assessed to him.

" * * * *

"Kenneth Kruse owns an undivided ½ interest in the real estate * * *."

In support of their second assignment of error, the Vollmars seem to argue that the purchase of the land and assets is a separate transaction from the agreement to form a partnership and, therefore, under the terms of the LIC, Kruse does not acquire a one-half undivided interest in the real estate until he pays the purchase price in full.

Where a contract is clear and unambiguous, its interpretation and construction are a matter of law to be determined by the court. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 449, 474 N.E.2d 271, 272; *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. In such case, " * * * the court must give effect to the agreement's express terms and it need not go beyond the plain language of the agreement to determine the parties' rights and obligations." *First Natl. Bank of Cincinnati v. Cianelli* (1991), 73 Ohio App.3d 781, 785, 598 N.E.2d 789, 791. In assessing the terms of an agreement, the court is guided by the " * * * general contract principle in Ohio law that writings executed as part of the same transaction should be read together." *Edward A. Kemmler Mem. Found. v. 691/733 East Dublin–Granville Road Co.* (1992), 62 Ohio St.3d 494, 499, 584 N.E.2d 695, 698.

R.C. 1775.24(A) provides that "[a] partner is co-owner with his partners of specific partnership property holding as a tenant in partnership." R.C. 1775.-24(B) sets forth the incidents of this tenancy.

 Upon consideration of the foregoing, this court finds: (1) the LIC and SPA were executed as part of the same transaction and must be read together; (2) when read together, the LIC and SPA are clear and unambiguous as to the parties' intent that the purchase and sale of the real property and assets of the business, and the agreement to divide profits and losses, are part of a single agreement to form a partnership, and that the real property is the property of the partnership; (3) pursuant to R.C. 1775.24(A), Kruse is a co-owner with the Vollmars of the real property, holding only as a tenant in partnership with the incidents of such tenancy as set forth in R.C. 1775.24(B); and (4) the trial court erred in finding that Kruse " * * * owns an undivided ½ interest in the real estate."

Accordingly, the Vollmars' second assignment of error is well taken.

### V. SALARY DEDUCTION

The trial court additionally found as follows:

"Although it was known that Mr. Kruse had a full time trucking job, he promised to work Saturdays in the business. Mr. Kruse has not worked the number of hours promised originally. Therefore Mr. Kruse must be required to deduct from his portion of the profits as a distribution to him of almost all of Mr. Evans' salary whether he worked weekdays or Saturdays."

In support of their sixth assignment of error, the Vollmars argue that, in light of this finding, the trial court should " * * * have determined the amount Plaintiff must be 'required to deduct,' * * * [and] render judgment against Plaintiff and in favor of Defendants in that amount on the counterclaim."

Kruse responds that the Vollmars' counterclaim was not properly before the court and, even if it was, the trial court did account for the salary deduction.

As to the Vollmars' argument that the trial court did not determine the amount to be deducted from Kruse's profits for Evans' salary, the trial court specifically found that:

"Ken Kruse was charged with a cash draw of 7,022.00 [sic] for 1990. Kruse should be charged with up to $100.00 per week for Robin's wages or his successor's wages. The Court finds Kruse must be charged with $5,200.00 draw for wages and Kruse was therefore shorted $1,822.00 as a distribution for 1990 and credit must be given to him as he received no cash draws."

As to the Vollmars' argument that judgment should have been entered on their counterclaim for the amount of Evans' salary chargeable to Kruse, this was neither alleged as part of their counterclaim nor argued as such and, in any event, to require the trial court to do so would result in double recovery.

Accordingly, the Vollmars' sixth assignment of error is not well taken.

## VI. COMPENSATORY DAMAGES

In support of their eighth assignment of error, the Vollmars attack various other findings of the trial court and its award of compensatory damages as being inconsistent with the evidence presented at trial.

This court has reviewed the entire record of proceedings that was before the trial court. Upon consideration thereof, this court finds that the award of compensatory damages is supported by competent, credible evidence.

Accordingly, the Vollmars' eighth assignment of error is not well taken.

On consideration whereof, this court finds that substantial justice has not been done the party complaining, and the judgment of the Wood County Court of Common Pleas is reversed in part and affirmed in part as set forth above. This case is remanded to said court to enter an order dissolving the partnership and for a final accounting, and for further proceedings and orders not inconsistent with this opinion. Costs are assessed against appellee. Judgment reversed in part and affirmed in part.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded.*

GLASSER, P.J., and SHERCK, J., concur.