2002 UT 93

**Glade Leon PARDUHN, Plaintiff and Appellant,**

v.

**Natalie Buchi BENNETT, Allison Buchi, Annabelle Buchi, Lance Buchi and Jessica Buchi the "Buchi Children" and Joanne Buchi, Defendants and Appellees.**

**Nos. 20010811, 20010926.**

Supreme Court of Utah.

Sept. 6, 2002.

Rehearing Denied Dec. 5, 2002.

P. Bryan Fishburn, Salt Lake City, for plaintiff.

Martin S. Tanner, Susan Black Dunn, Tim Dalton Dunn, Salt Lake City, for defendants.

JACKSON, Judge:

## BACKGROUND

¶1 On May 23, 1979, Brad Buchi and Glade Parduhn agreed to form an equal partnership under the name University Texaco Company and to conduct a service station business. The partners added a buy-sell

agreement to the partnership agreement, which provided that "in the event of death of either" partner, the survivor would purchase the decedent's interest in the "business" and "do with the business as he sees fit." They also agreed that the buy-out would be funded by the proceeds of life insurance policies on each other's lives, the premiums of which would be paid by the partnership.

¶ 2 On January 25, 1984, Buchi and Parduhn amended their partnership agreement to increase the amount of the insurance coverage from $20,000 to $100,000, and purchased life insurance coverage for that amount. On January 4, 1989, without amending the partnership agreement, Buchi and Parduhn again increased the insurance coverage on each other's lives to $300,000 and $250,000 respectively. The $300,000 policy on Buchi's life named Parduhn as the beneficiary and "buy/sell partner" as the purpose for the policy.

¶ 3 Buchi and Parduhn operated their business for eighteen years. Early in 1997, they contracted to sell their business and service stations to Blackett Oil Company. They closed their deal on July 14, 1997, transferred the business assets to Blackett, and ceased to do business. Buchi died on August 7, 1997. On November 6, 1997, Parduhn filed an action to establish his right to the proceeds of the insurance policy on Buchi's life. Buchi's wife and children argued that they should receive the proceeds under the buy-sell agreement. Parduhn filed a motion for summary judgment, which the trial court denied on the grounds that there were genuine issues of material fact.

¶ 4 In its August 27, 2001 Memorandum Decision, the trial court awarded the insurance proceeds to Buchi's survivors, determining that the buy-sell agreement remained effective after the business and its assets were sold, that the insurance policy's designation of Parduhn as the beneficiary was ambiguous, and that "Buchi intended that [Parduhn] not be the actual beneficiary but the beneficiary only to pass on the proceeds to Buchi's survivors." Parduhn appeals both the trial court's denial of his motion for sum-

mary judgment and its Memorandum Decision.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 5 Parduhn challenges the trial court's denial of his motion for summary judgment. "We review the trial court's grant or denial of a motion for summary judgment for correctness and accord no deference to the trial court's conclusions of law." *Malibu Inv. Corp. v. Sparks*, 2000 UT 30, ¶ 12, 996 P.2d 1043. Parduhn also challenges the trial court's conclusion that the insurance contract was ambiguous. "Whether a contract term is ambiguous is a question of law, which we review for correctness." *Sharon Steel v. Aetna Cas. & Sur.*, 931 P.2d 127, 134 (Utah 1997).

■ ¶ 6 Finally, Parduhn challenges the trial court's conclusion that the buy-sell agreement was effective at the time of Buchi's death. "[W]hether a contract exists between parties is a question of law which we review for correctness." *John Deere Co. v. A & H Equip.*, 876 P.2d 880, 883 (Utah Ct.App. 1994).

## ANALYSIS

¶ 7 The insurance policy unambiguously designates Parduhn as the beneficiary. Thus, we reverse the trial court's determination that the insurance policy's designation of Parduhn as the beneficiary was ambiguous. Accordingly, the key issue remaining is whether the buy-sell agreement remained in effect after the partners sold the partnership business because the trial court's ultimate conclusion hinges on this question. Because Parduhn directly challenges the trial court's conclusion that the buy-sell agreement remained effective, only after we review this ruling can we examine the parties' respective rights to the proceeds of the insurance policy.

¶ 8 The trial court ruled that "because it was still in effect at Buchi's death, the buy-sell agreement, if it existed, was still in effect." [1] We hold that the trial court erred in

---

**1.** Although it reluctantly prefaces its conclusion by the phrase, "if it existed," the trial court's

conclusion that the buy-sell agreement was still

this conclusion because Buchi and Parduhn contracted to sell and sold the major assets and "the business" to Blackett Oil Company. Thus they terminated the buy-sell agreement and also dissolved their partnership prior to Buchi's death.

## I. SALE OF THE BUSINESS

¶ 9 Buchi and Parduhn agreed to form their equal partnership under the name University Texaco Company and to conduct a *service station business*. They operated their business for eighteen years. Early in 1997, they agreed to sell their business and service stations to Blackett Oil Company. They closed their deal on July 14, 1997, transferred the business assets to Blackett, and ceased to do business.

¶ 10 At that point, there was no business, and neither owned a one-half interest in any business. Further, their joint and mutual sale to Blackett invoked the dissolution provisions of the partnership agreement. Accordingly, they began the process of winding up their partnership and liquidating the residual assets.

¶ 11 "A contract may be rescinded or discharged by *acts or conduct* of the parties inconsistent with the continued existence of the contract, and *mutual assent* to abandon or rescind a contract may be inferred from the attendant circumstances and conduct of the parties." 17A Am.Jur.2d *Contracts* § 558 (1991) (emphasis added); *accord Green v. Garn*, 11 Utah 2d 375, 359 P.2d 1050, 1054 (1961) *Copper King Mining Co. v. Hanson*, 52 Utah 605, 176 P. 623, 625 (1918); *see also* 17A Am.Jur.2d *Contracts* § 557 (1991) ("If the parties to a contract make a new and independent agreement concerning the same matter and the terms of the latter are so inconsistent with those of the former that they cannot stand together, the latter may be construed to discharge the former."); 17B C.J.S. *Contracts* §§ 434, 435 (1999).

¶ 12 Buchi and Parduhn's joint and mutual contract with Blackett discharged the partnership agreement because the sale was entirely inconsistent with the partnership's purpose of running a service station business.

in effect necessitates a conclusion that it also

Both the subject and purpose of their buy-sell agreement, the service station business, could no longer be reached by the buy-sell agreement. That agreement provided that on the death of either partner, the survivor would purchase the decedent's interest in the "business" and "do with the business as he sees fit." In other circumstances, a buy-sell agreement could relate to buying and selling the residual assets after dissolution of the partnership, and thus the buy-sell agreement would not necessarily be inconsistent with the sale of the business and dissolution. This particular buy-sell agreement, however, provided that the surviving partner would purchase the decedent partner's interest in the business for the purpose of continuing the business. Moreover, it contemplated buying and selling no other assets than the business itself. The business could only be sold once, and it was sold to Blackett. Thus, no business was left for a surviving partner to purchase with the proceeds of a buy-sell agreement. It would be highly unlikely that the partners ever intended the residual assets to be the subject of the buy-sell agreement, as the dissent hypothesizes. Further, the residual assets would be liquid, and there is no reason why one partner would wish to exchange liquid assets for the liquid assets of another.

¶ 13 Because the partners no longer owned the business, and the buy-sell agreement could no longer allow the surviving partner to continue the business "as he sees fit," the sale of the business to Blackett was completely inconsistent with their buy-sell agreement. Thus, Buchi and Parduhn mutually assented by their acts and conduct in selling the business to terminate not only the partnership agreement generally, but also the buy-sell agreement specifically.

## II. DISSOLUTION OF THE PARTNERSHIP

¶ 14 Likewise, Buchi and Parduhn's transaction with Blackett eliminated the object of and purpose for their partnership. "Partnership" is defined as "an association of two or more persons to *carry on a business*

existed.

for profit." Utah Code Ann. § 48–1–3 (1998) (emphasis added). Buchi and Parduhn agreed to form their partnership to conduct a *service station business.* Based on the sale of the business in 1997, the trial court correctly ruled that the partnership was dissolved. *See* Utah Code Ann. § 48–1–26 (1998) ("The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up, of the business.") *see also* 59A Am.Jur.2d *Partnership* § 808 (1987) ("In short, dissolution designates the point in time when the partners cease to carry on the business together."); *Cave v. Cave,* 81 N.M. 797, 474 P.2d 480, 484 (1970); *Hansen v. Kiernan,* 159 Mont. 448, 499 P.2d 787, 789–92 (1972) (reasoning that sale of critical assets of the partnership dissolved the partnership); *cf.* 68 C.J.S. *Partnership* § 303 (1998) (stating conduct inconsistent with the continuance of the partnership results in dissolution of the partnership); 59A Am.Jur.2d *Partnership* § 824 (1987) (same, citing *Cave,* 81 N.M. 797, 474 P.2d 480); *Kruse v. Vollmar,* 83 Ohio App.3d 378, 614 N.E.2d 1136, 1140 (1992) (same); *Lindsay v. Bevins,* 204 Va. 74, 128 S.E.2d 920, 922–923 (1963) (same).

¶ 15 Parduhn and Buchi agreed that their buy-sell agreement would be triggered "in the event of death of either of the partners," and nowhere did the partners agree that the buy-sell agreement would remain in effect after dissolution of the partnership. Because the partnership was dissolved prior to Buchi's death, the buy-sell agreement was rendered ineffective. *See Girard Bank v. Haley,* 460 Pa. 237, 332 A.2d 443, 446 (1975) ("If ... dissolution occurred during the lifetime of [a partner], those portions of the agreement, which are concerned solely with the effect of the death of a partner, are not germane."); *Goergen v. Nebrich,* 12 Misc.2d 1011, 174 N.Y.S.2d 366, 369 (N.Y.Sup.Ct. 1958) ("[T]he partnership was dissolved from the date of the decree. It cannot now be said that the death of the defendant ... caused the dissolution of the partnership so as to make applicable the provisions of the buy and sell agreement."); *see also* 59A Am.

Jur.2d *Partnership* § 814 (1987) ("[T]he effective date of dissolution is the date of the first effective act of dissolution. Subsequent acts or causes of dissolution are irrelevant."). We reverse the trial court's legal conclusion that the buy-sell agreement survived the sale of the business and the dissolution of the partnership because: (1) Buchi and Parduhn "rescinded or discharged [the buy-sell agreement] by [their] acts or conduct ... inconsistent with the continued existence of the" buy-sell agreement, 17A Am.Jur.2d *Contracts* § 558, and (2) the dissolution of the partnership prior to Buchi's death also rendered the buy-sell agreement ineffective. Accordingly, we also reverse the trial court's award of the insurance proceeds to Buchi's survivors because it was premised on the validity of the buy-sell agreement at the time of Buchi's death.

### III. DISTRIBUTION OF INSURANCE POLICY PROCEEDS

■ ¶ 16 Upon termination of the buy-sell agreement, the Utah Insurance Code governs distribution of the insurance policy proceeds. Section 31A–21–104(2)(a) specifically limits partners' insurable interests, required by section 31A–21–104(1)(b) for obtaining insurance generally, to those that are "for purposes of insurance contracts that are an integral part of a legitimate buy-sell agreement." Utah Code Ann. § 31A–21–104(2)(a) (1999). Because the buy-sell agreement was terminated, Parduhn had no insurable interest which was "for purposes of [an] insurance contract[ ] that [was] an integral part of a legitimate buy-sell agreement." *Id.* Thus, at the time of Buchi's death, Parduhn lacked an insurable interest under section 31A–21–104(1)(b), and may "not knowingly procure ... an interest in the proceeds of [the] insurance policy." [2] *Id.* § 31A–21–104(1)(b).

■ ¶ 17 However,

[a]n insurance policy is not invalid because the policyholder lacks insurable interest ... but a court with appropriate jurisdiction may order the proceeds to be

2. Accordingly, we affirm the district court's denial of Parduhn's summary judgment motion based

on this legal conclusion, rather than on the existence of genuine issues of material fact.

paid to some person [3] who is equitably entitled to them, other than the one to whom the policy is designated to be payable, or it may create a constructive trust in the proceeds or a part of them on behalf of such a person, subject to all the valid terms and conditions of the policy other than those relating to insurable interest or consent.

*Id.* § 31A–21–104(5). Accordingly, we remand for the trial court to equitably distribute the insurance proceeds pursuant to Utah Code Ann. § 31A–21–104(5).

## CONCLUSION

¶ 18 We affirm the trial court's denial of Parduhn's motion for summary judgment on other grounds. However, we reverse the trial court's legal conclusions that the buy-sell agreement survived the sale of the business and the dissolution of the partnership and that the insurance policy's designation of the beneficiary was ambiguous. Thus, we also reverse the trial court's award of the insurance proceeds to Buchi's survivors, and remand for the trial court to distribute the proceeds in a manner consistent with this opinion.

¶ 19 Justice HOWE and Judge DAVIS concur in Judge JACKSON's opinion.

¶ 20 Having disqualified themselves, Justice RUSSON and Justice WILKINS do not participate herein; Judges NORMAN H. JACKSON and JAMES Z. DAVIS from the Court of Appeals sat.

DURRANT, Associate Chief Justice, concurring in part and dissenting in part:

¶ 21 I concur with the majority's conclusion that the insurance policy unambiguously named Parduhn as the beneficiary of the insurance contract. I further agree with the majority's conclusion that the partnership between Buchi and Parduhn was dissolved, although not terminated, at Buchi's death. I disagree with the majority's conclusion, however, that, as a matter of law, the buy-sell provision of the partnership agreement was inoperative when Buchi died.[1] In my view, we cannot decide whether the buy-sell provision remained in effect because the intended purpose of the buy-sell provision is ambiguous. I would therefore remand for a determination of that factual question.

¶ 22 The majority concedes that *"a buy-sell [provision] could relate to buying and selling the residual assets after dissolution of the partnership, and thus ... [might] not necessarily be inconsistent with the sale of the business and dissolution."* (Emphasis added.) The majority sidesteps this possibility, however, by concluding that the buy-sell provision at issue "contemplated buying and selling no other assets than the business itself." Put differently, the majority concludes that the plain language of the buy-sell provision demonstrates that it was designed solely to fund transactions related to the service stations. Relying on this conclusion, the majority goes on to hold that because the

---

3. " 'Person' includes an individual, *partnership,* corporation, incorporated or unincorporated association, joint stock company, trust, reciprocal syndicate, or any similar entity or combination of entities acting in concert." Utah Code Ann. § 31A–1–301 (1999) (emphasis added). It is conceivable that the insurance policy and its proceeds belonged to the partnership entity. Property acquired with partnership funds are presumed to be assets of the partnership, including insurance on the life of a partner. *See* 59A Am.Jur.2d *Partnership* §§ 358, 362 (1987); *see also* Ferdinand S. Tinio, Annotation, *Insurance on Life of Partner as Partnership Asset,* 56 A.L.R.3d 892, 896–907, 1974 WL 35133 (1974) (making note of cases where payment of premiums was relevant or determinative in deciding insurance was partnership asset). However, this presumption may be rebutted with evidence of a contrary intention by the parties. *See* 59A Am.Jur.2d *Partnership*

§ 359 (1987). In determining the intent of the parties regarding whether such insurance is an asset of the partnership, courts have considered several factors, especially who the policy designates as the beneficiary and who paid the policy premiums. *See* 56 A.L.R.3d at 895–96.

Here, the trial court found that the intent of the partners was to keep the cost equal for the partnership and that the partnership in fact paid the premiums. In the event the insurance policy is an asset of the partnership, the proceeds would be divided equally between Buchi's estate and Parduhn, pursuant to the partnership agreement regarding asset division at winding up.

1. Although the majority refers to the buy-sell provision as an independent contract or agreement, it is actually an amendment to the partnership agreement, and I refer to it as such.

service stations had been sold, the buy-sell provision had no existing purpose at the time Buchi died. I disagree.

¶ 23 The majority mistakenly decides as a matter of law what is in reality a question of fact. Specifically, it reaches a legal conclusion regarding the intended purpose of the buy-sell provision even though the provision's purpose is ambiguous. Five factors support this view.

¶ 24 First, the buy-sell provision declares that after paying the insurance proceeds to the decedent's survivors, "[t]he surviving partner will own *the business* and may do with *the business* as he see's fit." (Emphasis added.) The phrase "the business" is not defined anywhere in the partnership agreement, however, and is inherently vague. Indeed, the word business means, among other things, "economic dealings," Webster's Collegiate Dictionary 154 (10th ed.1998), or a "commercial enterprise carried on for profit," Black's Law Dictionary 192 (7th ed.1999). Thus, contrary to the majority's view, the purpose of the buy-sell provision could extend to any asset of the partnership's business, including residual assets remaining after dissolution. The buy-sell provision's intended purpose is therefore capable of more than one reasonable interpretation. Accordingly, it is ambiguous. *See Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 19, 48 P.3d 918 (explaining that a "contract provision is ambiguous if it is capable of more than one reasonable interpretation" (internal quotations omitted)).

¶ 25 Second, the majority's narrow interpretation of the intended purpose of the buy-sell provision ignores the partners' agreement regarding what assets the surviving partner could purchase upon the death of the other partner. Specifically, section 13 of the partnership agreement states that "[u]pon the death of either partner, *the surviving partner shall have the right to purchase the interest of the decedent in the Partnership* ...." (Emphasis added.) Section 13 thus provides the surviving partner with the right to purchase any interest the decedent possessed in the partnership, including residual assets after dissolution. Given that the surviving partner maintains the right to pur-

chase any interest the decedent partner possessed at the time of his death, I see no reason for this Court to assume that the buy-sell provision of the partnership agreement was intended to fund the purchase of the service stations alone. Rather, when viewed in its entirety, the partnership agreement suggests that the partners might have intended the buy-sell provision to extend to any asset of the partnership, including residual assets remaining after dissolution.

¶ 26 Third, the majority asserts that "[i]t would be *highly unlikely* that the partners ever intended the residual assets to be the subject of the buy-sell [provision]...." (Emphasis added). The standard for deciding, as a matter of law, whether the buy-sell provision had an existing purpose, however, is not whether something is "highly unlikely." Rather, it must be clear that no reasonable trier of fact could find the provision was intended to purchase residual assets. *See Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1001 (Utah 1991) (explaining that the intent of the parties is primarily a jury question and will only be decided as a matter of law if no reasonable jury could reach a contrary conclusion). This standard is required in the instant action because the district court never addressed the purpose of the buy-sell provision.

¶ 27 Fourth, although not required to uphold the contractual provision, a logical reason existed for the partners to extend the buy-sell provision to residual assets. Specifically, the partners might have drafted the buy-sell provision to establish a set value for the deceased partner's interest in the partnership.

¶ 28 Finally, contrary to the majority's assertion that any decision to sell the gas stations would result in "residual assets [that] would be liquid," that result was not inevitable. For example, the gas stations could have been exchanged for another business or real property. Regardless, the partners were free to enter into a contract that mandated an exchange of liquid assets. *See, e.g., Salt Lake County v. Western Dairymen Coop.*, 2002 UT 39, ¶ 18, 48 P.3d 910 (stating that "we have repeatedly held that compe-

tent parties are free to bargain for any term that does not require a violation of the law").

¶ 29 Accordingly, a question of fact exists regarding the buy-sell provision's purpose, and I would remand for a factual determination on that issue. *See Plateau Mining Co. v. Utah Div. of State Lands & Forestry,* 802 P.2d 720, 725 (Utah 1990) (noting that where ambiguity exists in a contract, the intent of the parties is a question of fact to be determined by the trier of fact).

¶ 30 Chief Justice DURHAM concurs in Associate Chief Justice DURRANT's concurring and dissenting opinion.