OPINION.
These four consolidated appeals are based on a few simple facts. All the parties are or were at one time beneficiaries of a trust that had as its trustees Robert Hodary, Bobby Chancey, Sr., and Leo Breslin. The trust estate consists of a piece of undeveloped Tennessee property, and the beneficiaries of the trust are investors who purchased shares of beneficial interest in the trust estate. The beneficiaries believed that the property would be quickly sold for a profit and that they would receive a return on their investments within a short time. Unfortunately, fourteen years later, the property has not sold, and the beneficiaries are battling over how to divide the money when it is. In one form or another, the various cross-appeals contest the trial court's attempt to provide an equitable resolution as to who gets what portion of the proceeds when the property is sold. We commend the trial court's diligence in attempting to resolve these issues, generally affirm its judgment, but reverse and remand on two issues.
 I. Background
Robert Hodary and Bobby Chancey, Sr., entered into a partnership agreement to purchase, develop, and sell 500 acres of land located in Tennessee. Shortly afterward, Hodary, as trustee, executed a seven-month option to purchase the property from Peninsula Estates, Inc. To exercise the option, Hodary was required to pay $350,000 cash at closing and the $400,000 balance in ten equal annual installments of $40,000. The option-to-purchase agreement also included a provision indicating that Chancey, Sr., was to be co-trustee. Hodary exercised the option, and he and Chancey, Sr., acquired the property by deed as co-trustees. They also executed a trust deed to Peninsula for the $400,000 balance and signed a promissory note for a $100,000 loan from the Central Trust Company to make the initial payment on the $400,000.
Hodary and Chancey sought investors to contribute to their endeavor. They offered potential investors the opportunity to purchase shares in the property for $1,500 per share. The partnership created a trust whose beneficiaries consisted of several investors, including Breslin and Hodary, individually. The partnership also was a beneficiary. (Of the partnership's 93.33 shares, 26.67 shares were based on the $40,000 promissory note signed by Chancey and Hodary, and 66.66 shares were based on the partnership's $100,000 contribution. Aside from the initial investments, the trust provided for the sale of additional shares.)
When the property did not sell as quickly as everyone had hoped, Hodary informed the beneficiaries of the danger of a pending foreclosure and the need for more money. Subsequently, foreclosure occurred and Peninsula reacquired the property. In 1987, Hodary paid Peninsula $100,000 and purchased the property out of foreclosure, in his name as trustee and subject to a trust deed and a note for $312,502.04. He later paid $66,251.02 from his own funds to Peninsula. In 1989, Hodary requested that the beneficiaries purchase additional shares because he feared the property would be lost again. While some beneficiaries made the additional equity contributions, others did not. Hodary used the additional contributions to pay down the $312,502.04. He subsequently paid the trust deed in full and obtained a full release of lien from Peninsula.
 II. The First Lawsuit
During 1989, Hodary filed a lawsuit against Chancey, Sr., seeking to terminate his participation in the partnership and in any future profits from the partnership based on Chancey, Sr.'s alleged misconduct and failure to make timely loan payments and contributions to debts and expenses pursuant to the partnership agreement. The trial court entered a default judgment against Chancey, Sr. In 1995, the court amended its judgment at Hodary's request to remove Chancey, Sr., as trustee. (Sometime during the lawsuit, Hodary died and his estate was substituted as the plaintiff.) In 1998, Chancey, Sr., moved to set aside the judgment based on the trial court's alleged lack of subject-matter and personal jurisdiction, but his motion was denied. Chancey appealed and this court affirmed the trial court's judgment.[1]
 III. The Current Lawsuit
Meanwhile, Jack Merkle, a beneficiary of the trust, filed the complaint that is the genesis of this appeal, seeking the appointment of a receiver and a declaration of which beneficiaries had an interest in the trust and the extent of the interest of each. (Merkle filed this lawsuit at the behest of Breslin, the remaining trustee, in order to remove any potential cloud on the title. Two disputed issues were whether the beneficiaries who had refused to purchase additional shares when requested to do so by Hodary had forfeited their initial shares, and whether Hodary's purchase of the property out of foreclosure terminated the original trust and created a new one.) Both beneficiary Guy Gibson and Hodary's estate filed counterclaims against Merkle and cross-claims against the other defendants. In their cross-claims, both sought declarations as to what parties had an interest in the trust and in what proportion.
After a trial to the bench, the trial court concluded that the trust had not been abrogated and that at all times Hodary had been acting as trustee of the trust. It concluded that the evidence was insufficient to demonstrate that the foreclosure and repurchase of the Tennessee property by Hodary established a new trust. The trial court determined that all the original investors, except Bobby Chancey, Sr., remained as full beneficiaries as to their original investments, that Ken Wolf, whose name did not appear on the initial list of beneficiaries, was a beneficiary, and that the beneficiaries who made additional contributions in 1989 had a proportionately greater share of the available proceeds.
The court also ordered that Chancey, Sr's judicially forfeited shares be distributed by percentage to the remaining beneficiaries. The trial court provided a list of the number of shares held by each beneficiary. The trial court also ordered that any loans by Hodary and tax payments by Breslin be repaid at 10% interest prior to disbursement to the beneficiaries after the sale of the property, and that Hodary's out-of-pocket expenses, totaling $69,211.18, also be paid before disbursement. It concluded that the appointment of a receiver was unnecessary.
Merkle filed a motion for a new trial, in which he asked the trial court to reconsider its determination that Hodary's contributions be treated as loans, and not as equity contributions. Hodary's estate also filed a motion for a new trial, seeking to have the money Hodary paid toward the repurchase of the property treated as equity contributions. The estate also contested the trial court's decision to place Chancey, Sr.'s judicially forfeited partnership shares into the trust to be distributed by percentage to the remaining beneficiaries, as opposed to recognizing that the forfeited shares belonged to Hodary as the sole remaining partner of the partnership.
Hodary's estate also filed a motion for clarification as to whether any interest awarded on what the trial court defined as loans was simple interest or was to be compounded annually. It further requested clarification whether the interest on the out-of-pocket expenses continued to accrue until the sale of the property and repayment in full to the estate. The trial court did not enter a judgment as to these issues, nor has its failure to do so been appealed.
After a hearing, the trial court denied the motions for a new trial. It did, however, amend its previous decision to list the specific loan amounts and the dates of loans made by Hodary, including an April 3, 1986, loan of $100,000.
 IV. The Chanceys' Appeal
Chancey, Sr., and Bobby Chancey, Jr., appeal the trial court's decision, raising two assignments of error. In their first assignment, they contend that the trial court lacked subject-matter jurisdiction. In their second assignment, they claim that the trial court lacked personal jurisdiction.
We determined in Estate of Hodary v. Chancey, supra, a case based on the same trust at issue in this case, that Ohio has subject-matter jurisdiction over the trust despite the fact that the property is located in Tennessee. In that case, we explained that when a complaint states a claim in personam, as opposed to inrem, the trial court has subject-matter jurisdiction to hear the case, even if it collaterally involves land situated in another jurisdiction. When acting in personam, a court of equity in one state has "jurisdiction to enforce a trust, and to compel the specific performance of a contract in relation to lands situate in another state, after having obtained jurisdiction of the persons upon whom the obligation rests * * *."[2] The remaining trustee in this case is Breslin. Breslin is an Ohio resident who has voluntarily submitted to the trial court's jurisdiction over his person. The issues raised in the complaint filed by Merkle do not state a claim directly concerning real property. The complaint merely asks that the court clarify the rights of the beneficiaries once the property is sold and to appoint someone to manage and sell the property. Obviously, the trial court had the power to hear and decide these issues.
The Chanceys also claim that the trial court had no personal jurisdiction over them in this case. Bobby Chancey, Jr., answered the complaint and cross-claims without raising personal jurisdiction as a defense. Therefore, he has waived the defense of personal jurisdiction. Although, as discussed below, Chancey, Sr., has no stake in the outcome of this litigation, he did explicitly raise the issues of both subject-matter jurisdiction and personal jurisdiction as to Merkle's complaint. In his answers to the cross-claims, he also asserted that the trial court lacked "jurisdiction" and that jurisdiction could not be waived. Because personal jurisdiction can be waived, it is obvious from his answers to the cross-claims, which also sought a declaration of rights and interests of all the beneficiaries and trustees in the trust proceeds, that Chancey, Sr., contested only subject-matter jurisdiction as to the cross-claims. Thus, he submitted to the personal jurisdiction of the court as to cross-claims that, in essence, raised the same issues as the complaint.[3]
To the extent that Chancey, Sr., is attempting to contest his removal as a participant in the trust proceeds, that issue has previously been determined. In the first litigation involving this trust, the trial court determined that Chancey, Sr. could not participate in the partnership or in its profits, and it also removed him as a trustee. Chancey, Sr., did not contest the merits of the earlier decision.
Chancey, Sr., did, however, in the earlier case contest the trial court's jurisdiction over his person and the subject matter of the litigation. This court concluded that Chancey, Sr., had waived the defense of personal jurisdiction and that the trial court had subject-matter jurisdiction to decide his removal as trustee and beneficiary of the trust. In this case, he attempts to attack indirectly what he did not attack directly in the former case the trial court's determination that he is neither a trustee nor a beneficiary. "A point of law or fact which was actually and directly in issue in the former action, and was there passed upon and determined by a court of competent jurisdiction, may not be drawn in question in a subsequent action between the same parties or their privies. The prior judgment estops a party, or a person in privity with him, from subsequently relitigating the same issue raised in the prior action."[4] Although the Ohio Supreme Court has not directly addressed the issue, collateral estoppel has been applied to default judgments by some appellate courts.[5]
Although we recognize that the application of collateral estoppel is not consistently applied to default judgments in Ohio, we believe that under the facts of this case, where Chancey failed to directly contest the validity of the entry removing him as a trustee and forbidding him to participate in any profits of the partnership, i.e., as a beneficiary to the trust, application of the doctrine is required.
 V. Merkle's Cross-Appeal
Merkle claims in his sole assignment of error that the trial court abused its discretion in denying his motion for a new trial. The trial court's amended judgment clarified its previous judgment and concluded that Hodary had loaned the trust $554,221.43. Although Merkle failed to indicate under which subsection of Civ.R. 59(A) he brought his motion for a new trial, his appeal indicates that he believed that the trial court's decision to treat the $554,221.43 as loans by Hodary was against the manifest weight of the evidence.[6] To reverse the trial court's denial of Merkle's motion for a new trial on this basis requires a determination that the trial court abused its discretion.[7] Where the trial court's judgment is supported by competent, credible evidence, it is not against the manifest weight of the evidence,[8] and thus, it would not constitute an abuse of discretion to refuse to grant a new trial.[9] Where a trial court's decision involves questions of fact, "a reviewing court should view the evidence favorably to the trial court's action * * *."[10]
While the trial court characterized the monies expended by Hodary to acquire the property as loans as opposed to equity contributions, in essence, the monies were properly used to cover expenses that were reasonably necessary for Hodary, as trustee, to preserve the trust property. Trustees are "entitled to indemnity for expenses properly incurred by them in the administration of the trust."[11] Where the trustee advances his own money in discharging such obligations, the trustee "is then entitled to reimbursement out of the trust estate for the amount so advanced."[12] The trial court may also allow a reasonable rate of interest to the trustee on the advanced money.[13]
There is competent, credible evidence to support the trial court's conclusion that the funds advanced to acquire the property were not equity contributions. The trust agreement provides that any expenses incurred by the trustees in the protection of the trust estate are to be reimbursed prior to any payment of proportionate shares of income derived from the trust property to the beneficiaries.
Breslin, the remaining trustee, who testified both as an expert and as a trustee, stated that he expected to be reimbursed for taxes he paid on behalf of the trust as out-of-pocket expenses and that the trust provided for compensation for duties performed on behalf of the trust. Breslin testified that as trustee he expended funds for the same reason Hodary did, but not to the same extent. He believed that Hodary's actions in advancing money was done as a fiduciary with the expectation of being reimbursed. He characterized Hodary's monetary participation in the foreclosure as a loan to the trust. The trial court also had before it, as a part of Merkle's Exhibit 12 and Hodary's Exhibit 11, a document dated September 13, 1989, in which Hodary indicated an expectation that he would be reimbursed
for payment of interest, real-estate taxes, mortgage payments, miscellaneous payments, and the buy-back after the foreclosure, including the monetary amounts owed. In the same document, there was also an indication that Hodary expected to receive $74,965 of the profits after others had been paid their contributions out of the profits. Hodary indicated that the monies due him were not all profits and that he should receive payment for producing capital and buying back the property. Contrary to the claim by Hodary's estate that this demonstrates that Hodary's monetary advancements were capital contributions, the document could reasonably indicate that Hodary expected additional payment for the services and time he expended in preventing the trust property from being lost. Because there was competent, credible evidence that the advancements by Hodary were not capital contributions, but monies expended as a fiduciary to protect the trust estate, we conclude that the trial court did not abuse its discretion.
Further, we conclude that the trial court did not abuse its discretion in providing that the enumerated loans made by Hodary to acquire the property be repaid at 10% interest. A court's jurisdiction to determine what is to be paid from the trust estate "is basically equitable [and] such court is vested with wide discretion in making that determination, and * * * it must, to a large extent, resolve each case according to its own facts, circumstances and equities."[14] The record demonstrates that, to save the property, Hodary took out loans for which he was obligated to pay varying interest rates. We conclude that allowing Hodary the legal interest rate on the loans was not an abuse of discretion.
We do find error, however, with the trial court's conclusion that the April 3, 1986, $100,000 note was a loan by Hodary to the trust. The evidence demonstrates that while this amount was a loan from the Central Trust Company, it was contributed by the partnership to purchase its shares. Thus, as we explain below in our discussion of the cross-appeal of Hodary's estate, Hodary was entitled to the shares of the partnership relating to that amount. To allow the estate to claim that amount as both a loan and a capital contribution to purchase the partnership's initial shares is erroneous. Thus, we conclude that as to the April 3, 1986, loan, Merkle's assignment is well taken.
 VI. The Estate of Hodary's Cross-Appeal
Hodary's estate raises one assignment of error in its cross-appeal, claiming that the trial court erred when it awarded Chancey, Sr.'s judicially forfeited partnership shares to all the beneficiaries as opposed to the remaining partner. It characterizes the trial court's conclusion as "looking behind" the judgment entered in the first lawsuit. Hodary's estate raised this issue in its motion for a new trial, in which it argued that the judgment was against the manifest weight of the evidence and contrary to law. We agree that the trial court erred as a matter of law in not vesting in Hodary, the remaining partner, Chancey, Sr.'s judicially forfeited shares in the trust estate.
In the first case, the trial court terminated Chancey, Sr.'s participation in the partnership and in its future profits. At that point in time, there were no profits and Hodary was still alive. What the partnership owned at that time were shares in the trust estate, which Hodary and Chancey, Sr., co-owned as tenants in partnership.[15] Thus, at the time the trial court precluded Chancey, Sr.'s participation in the partnership, it effectively vested in Hodary, the remaining partner, Chancey, Sr.'s interest in the shares.
In contrast, the trial court's decision in this case failed to recognize that Hodary and Chancey, Sr., owned the shares as tenants in partnership. In essence, its equal division of the partnership shares between Chancey, Sr., and Hodary, and its order for distribution of the future profits from Chancey, Sr.'s portion of the shares to the other beneficiaries, erroneously treated Chancey, Sr., as the owner of an undivided one-half interest in the shares.[16] Thus, the trial court erred in ordering that Chancey, Sr.'s judicially forfeited shares be distributed to the remaining beneficiaries. Those shares, as partnership property, were owned by Hodary after the judgment was entered in the first lawsuit.
Several of the beneficiaries contest the number of alleged shares in the partnership. Attached to Merkle's Exhibit 6 is a list captioned "Beneficial Interests of Beneficiaries." That list indicates that because of $140,000 expended by Chancey and Hodary under the option-to-buy agreement and the note to the Central Trust Company, the partnership, i.e., "Chancey and Hodary" had 93.33 shares. This same document lists shares owned by individual beneficiaries, including Hodary. The partnership agreement states as its purpose the purchase and ownership of the Tennessee property. We deem this sufficient evidence to demonstrate the intent that the monies designated under "Chancey and Hodary promissory note" and "Chancey Hodary" were to be contributions to purchase partnership shares.
Consequently, we conclude that the trial court erred in not recognizing that Chancey, Sr.'s judicially forfeited shares belonged to Hodary. We sustain Hodary's assignment of error.
 VII. Gibson's Cross-Appeal
In his cross-appeal, Gibson argues that the trial court erred by overruling his objections to the admission of hearsay evidence. Gibson argues that all the evidence provided by Hodary's son, Timothy Hodary, constituted hearsay. He argues specifically that the admitted documents did not fall under the business-records exception to the hearsay rule, because Hodary's estate failed to supply an adequate foundation.
Evid.R. 803(6) provides as an exception to hearsay a "memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness* * *."
Breslin testified that Hodary was in charge of the records for the money contributed to the trust, and that Hodary actively managed the trust affairs. Hodary's son testified that he was the current custodian of his father's records. He also testified that his father meticulously kept records for every investment he owned, and that he kept the records, in separate tabbed folders, in a file drawer in his business office. Timothy Hodary testified that the records were his father's business records, that he was familiar with the records, and that he had done real-estate work in his father's office and had routinely been in the files from the summer of 1986 through the spring of 1989. He also testified that the tendered documents were records of the Peninsula estate matter. We believe this testimony was minimally sufficient to show that Timothy had personal knowledge of his father's record-keeping system so as to lay a proper foundation to admit the exhibits.
To the extent that any documents or any statements of Hodary contained in them were inadmissible under the business-records exception, we conclude that they were separately admissible under Evid.R. 804(B)(5). This rule permits hearsay testimony of a deceased person if (1) the estate of the decedent is a party, (2) the statement was made before the decedent's death, and (3) the statement is used to rebut testimony by an adverse party on a matter within the knowledge of the deceased.[17]
In this case, there is no dispute that the estate was a party in the proceedings below, and that statements contained in the various documents were made by Hodary before he died. The only issue contested is whether the evidence presented was used to rebut testimony by an adverse party. Merkle, as the plaintiff in this case, put into evidence that Breslin, a trustee and beneficiary of the trust, did not believe that he was obligated to make the additional contribution to the trust requested by Hodary, that the trust did not call for forfeiture of the beneficiaries' interests for failing to do so, and that the original trust was still viable. Breslin himself testified that he believed the monies contributed by Hodary were to be repaid on a dollar-for-dollar basis, as opposed to a proportionally greater amount, and that Hodary's conclusion that all the original investors had lost their investment was inconsistent with Hodary's behavior. Other beneficiaries also testified that the requested additional contributions were not mandatory under the trust, and that the failure to provide additional money did not forfeit their shares. Consequently, many of the documents containing Hodary's statements were presented to rebut those positions. We overrule the assignment of error in Gibson's cross-appeal.
 VIII. Disposition
Accordingly, we reverse that portion of the trial court's judgment that determined that Hodary had loaned the trust $100,000 on April 3, 1986, and that placed Bobby Chancey, Sr.'s judicially forfeited partnership interest into the trust for distribution to the remaining beneficiaries. We remand this cause to the trial court and direct it (1) to delete the April 3, 1986, loan from its amended judgment, as it is reflected in Bobby Chancey, Sr.'s judicially forfeited partnership shares; (2) to order that Bobby Chancey, Sr.'s judicially forfeited partnership shares are owned by Hodary's estate; and (3) to recalculate the proportional shares of the trust beneficiaries to reflect that Hodary's estate is entitled to those judicially forfeited shares. In all other respects, the trial court's judgment is affirmed.
Judgment affirmed in part and reversed in part, and causeremanded.
 HILDEBRANDT, P.J., and SHANNON, J., concur.
RAYMOND E. SHANNON, retired, of the First Appellate District, sitting by assignment.
[1] See Estate of Hodary v. Chancey (Dec. 17, 1999), Hamilton App. No. C-980896, unreported.
[2] Burnley v. Stevenson (1873), 24 Ohio St. 474, 478.
[3] See American Diversified Developments, Inc. v. Hilti Constr.Chem., Inc. (Oct. 29, 1998), Cuyahoga App. Nos. 73116 and 73168, unreported.
[4] Trautwein v. Sorgenfrei (1979) 58 Ohio St.2d 493,391 N.E.2d 326, 327, syllabus.
[5] See Corydon Palmer Dental Society v. Johnson, Johnson Assoc., Inc. (Feb. 16, 1988), Mahoning App. No. 87 C.A. 121, unreported, and cases cited therein; Rico's Red Lion PizzaParlors, Inc. v. Amusement World, Inc. (Feb. 23, 1983), Montgomery App. No. 7889, unreported; Zaperach v. Beaver (1982), 6 Ohio App.3d 17,451 N.E.2d 1249. But, see, North Dayton Truck Serv. v.Terrell (Mar. 15, 1982), Montgomery App. No. 7447, unreported.
[6] See Civ.R. 59(A)(6).
[7] See Rohde v. Farmer (1970), 23 Ohio St.2d 82, 262 N.E.2d 685, paragraph one of the syllabus.
[8] See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,461 N.E.2d 1273.
[9] See Hancock v. Norfolk Western Ry. Co. (1987), 39 Ohio App.3d 77,81, 529 N.E.2d 937, 942.
[10] Jenkins v. Krieger (1981), 67 Ohio St.2d 314, 320,423 N.E.2d 856, 861.
[11] 3A Scott on Trusts (4 Ed. 1988) 323, Section 244.
[12] Id. at 325; see Mannix v. Purcell (1888), 46 Ohio St. 102,148, 19 N.E. 572, 590.
[13] 2A Scott on Trusts (4 Ed. 1988) 402, Section 170.20; seeSuburban Home Mortgage Co. v. Hopwood (1948), 83 Ohio App. 115,125, 81 N.E.2d 387, 392 (award of interest to trustee from date of payment of real-estate taxes).
[14] Lloyd v. Campbell (1964), 120 Ohio App. 441, 451-452,196 N.E.2d 786, 793.
[15] See R.C. 1775.24(A).
[16] See Kruse v. Vollmar (1992), 83 Ohio App.3d 378, 390,614 N.E.2d 1136, 1144.
[17] See Brooks v. Bell (Apr. 10, 1998), Hamilton App. No. C-970548, unreported; Lucas v. Barrett (Nov. 16, 1994), Ross App. No. 94CA1998, unreported.